UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THE RICE COMPANY,    :

            Plaintiff,    :    07 Civ. 7077 (WHP)

 - against -    :    ECF Case

EXPRESS SEA TRANSPORT CORPORATION,    :

            Defendant.    :
------------------------------------------------------------X

## DECLARATION OF HUGH MAXWELL TOWNSON

HUGH MAXWELL TOWNSON declares under penalty of perjury under the laws of the United States of America as follows:

1.    I am acting Insurance & Claims Manager for Express Sea Transport Corporation ("ESTC") and make this declaration on its behalf and in support of its Motion to Vacate or Reduce Maritime Attachment in this proceeding.

2.    The purpose of this declaration is twofold: First, to set out ESTC's objections to the fact and terms of the Plaintiff's Supplemental Admiralty Rule B application dated on or around 9 August 2007 and on that basis to support the request that the Court's 9 August 2007 Ex Parte Order (the "Order" or the "Attachment") be vacated. Second, to provide details of ESTC's counterclaim against the Plaintiff and the amount of countersecurity ESTC seeks pursuant to Supplemental Admiralty Rule E(7).

3.    Leaving aside all issues relating to the merits of the Plaintiff's claim (which issues will be resolved in due course in the London arbitration commenced on 17 July 2007 in respect of the substantive disputes arising under the charterparty dated 4 April 2007), in ESTC's view, the Attachment was and remains precipitate, unwarranted and inappropriate, and should therefore be



vacated. In the alternative, the Order should at the very least be amended so that it accurately and reasonably reflects the amount of the loss and damage (allegedly) suffered by the Plaintiff. These issues are dealt with in turn in the following paragraphs.

4. In ESTC's view, the Plaintiff's Application was unwarranted and inappropriate given that ESTC has expressly offered to provide the Plaintiff with security for its claim, and that this offer remains open, without a satisfactory and/or full answer from the Plaintiff as to why it is unacceptable.

5. ESTC first informed the Plaintiff that it was willing voluntarily to provide security in respect of the Plaintiff's reasonably estimated claim on 11 July 2007, over 1 month before the Plaintiff obtained the Attachment. The precise form of the security was not discussed at this stage, and ESTC had it in mind that it would be a matter for discussion or negotiation between the parties in an ordinary commercial manner. At the same time, in an effort to ensure that no unnecessary, inappropriate or precipitate steps were taken by the Plaintiff to obtain security in respect of its claim (for example, by taking action against ESTC's assets), ESTC also requested that the Plaintiff inform any relevant court (i.e. before which such action would be taken) of ESTC's willingness to provide security.

6. The Plaintiff did not respond to or in any way acknowledge that offer. Therefore, on 24 July, ESTC's London solicitors, Reed Smith Richards Butler ("RSRB"), wrote to the Plaintiff's London solicitors, Winter Scott ("WS"), to repeat that ESTC was willing to provide security for the Plaintiff's claim, and this time (in the absence of any response to the first message concerning security) to set out ESTC's proposals as to the form and terms of that security. RSRB's message stated as follows:

> "... it is obviously in both parties' interests that your client's claim is resolved sensibly, quickly, and with minimum fuss. With that in mind, and notwithstanding

> *that your client has not yet requested security for its claim, we are instructed to inform you that ESTC is in principle prepared to provide TRC with security in the form of an ESTC letter of undertaking, subject to agreement between the parties as to the terms of that LoU and on quantum. In the absence of such agreement, with a view to avoiding any unnecessary expense and delay in connection with the provision of security, ESTC would be prepared to refer to the Tribunal for a determination.*
>
> *We are also instructed to inform you that ESTC is willing in principle to replace the LoU with a bank guarantee in the event TRC obtains an award in its favour in the arbitration and ESTC appeals that award (and for appropriate provision to be made in that respect in the LoU)".*

See Exhibit "1" annexed hereto.

7. Despite RSRB's chaser on 31 July, the Plaintiff failed to acknowledge or otherwise respond to ESTC's offer of 24 July in the 16 day period, which elapsed between the offer and the filing of the Application before this Court on 9 August.

8. Further, as ESTC understands it, despite ESTC's specific request on 11 July, neither the fact of ESTC's offers to provide security, nor the Plaintiff's failure to answer, explore further or even reject the offer was mentioned by the Plaintiff or its attorney in its Verified Complaint or otherwise in connection with the Application.

9. In fact, it was only after RSRB wrote to WS on Friday 24 August to:

    (a) inform WS that ESTC had become aware of the Attachment;

    (b) request an explanation as to the Plaintiff's actions obtaining the Ex Parte Order in circumstances where an offer for the provision of security was open and remained unanswered by the Plaintiff; and

    (c) repeat the offer made on 24 July,

that the Plaintiff finally responded to that offer (by way of a WS fax, received by RSRB at 1839 London time on Friday 24 August, some 44 days after ESTC's initial offer on 11 July, and 31 days after the 24 July offer). However, that response essentially amounted to a bald rejection of ESTC's



offer, lacking any explanation as to why the Plaintiff had determined to make the application for the Ex Parte Order rather than accept or explore ESTC's offer. WS stated that:

> "... our Clients did not consider that a letter of undertaking from your clients themselves, not being countersigned by a first class bank, offered much comfort to them."

See Exhibit "2" annexed hereto.

10. Against that background, on 28 August (following the public holiday in England on 27 August), RSRB wrote to WS:

    (a) to explain why the security offered by ESTC was in ESTC's view reasonable and satisfactory;

    (b) to remind WS and the Plaintiff that ESTC's offer of 24 July included provision for reference to the London arbitral Tribunal in the absence of agreement as to form and terms of security;

    (c) in an effort to reach a quick resolution, also to offer alternative security by way of bank guarantee; and

    (d) to request that the Plaintiff withdraw the U.S. proceedings forthwith.

In material part, RSRB's message stated as follows:

> "If you or your clients had any misgivings about the security proposal then on the table, it is perverse for you to run off to the SDNY to make an expensive application rather than to take the basic professional and reasonable courtesy of responding to our email.
>
> You have also failed to explain why the security proposed was actually of no comfort to TRC. Perhaps that is hardly surprising, because there is in fact no good reason at all. We note that whilst TRC asked ESTC to take on substantial exposure by accepting a TRC letter of undertaking in respect of their orders to deliver cargo in Iran without the presentation of original bills of lading, they are not prepared to take a similar letter from ESTC. It is unreasonable, for example, that TRC should expect to give a letter for the delivery of the cargo in Iran, without counter-signature by any



> bank, yet expect ESTC to provide a bank guarantee to them for a speculative claim for wrongful withdrawal of the ship from charter.
>
> TRC can have no reason whatsoever to suppose that ESTC would renege on an undertaking either to meet an adverse Award or to provide the bank guarantee to secure it whilst it was under appeal in accordance with the offer. They have no evidence, for there is none, of ESTC's non-payment of an adverse arbitration award, nor of meeting any obligations secured by an undertaking. Neither do they have any reason to suppose that ESTC are any less jealous of their reputation within the market place than are TRC. Beyond that, even if TRC's worst fears were realized and they were left with a damages claim for breach of agreement, they would still have recourse to the action they have so recently taken.
>
> ... The fact is that ESTC offered security to TRC in order that the issues arising from the withdrawal of the ship could be discussed and settled reasonably, straight-forwardly, without rancour, without business interruption and without the matter of security being adopted as a weapon in the cause. It is quite clear that TRC have made this unconscionable move in an attempt to increase their bargaining leverage.
>
> ...If TRC are adamant that it is absolutely necessary to have urgent security for their claim in the form of a bank guarantee, then ESTC are content to provide the same forthwith against TRC undertaking to answer for the costs of the same from the date of establishing it until the date of payment of an adverse award or settlement or until the date of either party filing an application to appeal the award. In the alternative, ESTC are content to repeat their earlier offer of an ESTC letter of security, first made over a month ago, which they propose as reasonable or, to join with TRC in an invitation to the arbitration Tribunal, now constituted, to order on security (i) as to wording, (ii) as to form and (iii) as to amount, in the absence of agreement on these points between the parties.
>
> In any event, it must on any reasonable view be inappropriate for TRC to continue with their inexplicable proceedings in the United States. We therefore look forward to your urgent confirmation that those proceedings will be withdrawn forthwith."

See Exhibit "3" annexed hereto.

11. WS responded to that message by way of a fax received by RSRB at 1849 on 28 August by stating that:

> "... it remains our Clients' position that the security previously offered by your Clients, which was not suggested to be countersigned by any bank, was wholly unacceptable".

With regard to ESTC's offer to provide a bank guarantee, WS simply stated that:

5

"*we note your Clients are now prepared to put up a bank guarantee... subject to our Clients paying for the cost of this. This condition is unacceptable...*"

See Exhibit "4" annexed hereto.

12. On that basis, WS indicated that the Plaintiff was not prepared to withdraw the U.S. proceedings. That position has been repeated by the Plaintiff's New York lawyers. However, this leaves unanswered:

(a) *Why the Plaintiff made sought the Ex Parte Order in the first instance.*

In ESTC's view, if the Plaintiff's genuine aim was to obtain security in respect of its claim, rather than another agenda, it should and would have acknowledged ESTC's offer of 24 July, and if that offer was not acceptable, explored the scope for amicable agreement, for example, by specifying what amendments to the form and/or terms of security it sought, rather than simply proceeding with the Application.

(b) *Why the Plaintiff is not prepared to agree ESTC's proposal that in the absence of agreement as to the form and terms of security, the parties should refer to the Tribunal for a determination in that respect.*

This would ensure that the Plaintiff is provided with security in a form and amount determined to be reasonable and appropriate by the Tribunal to whose jurisdiction the parties have submitted in respect of the substantive dispute between them.

(c) *Why ESTC's proposal (made in RSRB's fax of 28 August) for the provision of a bank guarantee is not acceptable.*

WS's fax of 28 August simply amounts to a bald rejection of that proposal.

13. This entire proceeding in New York has also resulted in both parties incurring significant costs which would have been avoided altogether if the Plaintiff had taken up ESTC's offer of security. Any attachment of ESTC's funds will further increase costs and, ultimately, is

6

only likely to lead to the provision of the type of security now on offer from ESTC, on the basis set out in RSRB's message of 28 August (see above). An attachment would also cause significant inconvenience for ESTC's business, which given all of the above, is entirely unwarranted and unnecessary, but perhaps what the Plaintiff really intended.

14. In the circumstances, the Plaintiff's decision to obtain the Attachment and maintain it despite the foregoing facts (and its inability/unwillingness properly to explain why it is not prepared to accept or explore ESTC's offer for the voluntary provision of security on the basis set out above) indicates that the Plaintiff's intention was to increase its leverage and bargaining power with regard to the substantive dispute, rather than provide the Plaintiff with security for its claim.

15. ESTC is also mindful that the Plaintiff is seeking the assistance of this U.S. Court in circumstances where it appears to have violated U.S. law, because the loss of profit for which it seeks attachment security includes prospective earnings for a voyage to Bandar Imam Khomeini in Iran (on which, see paragraphs 26-30 below). When RSRB recently examined ESTC's voyage file, they noted the content of the Plaintiff's email to the vessel dated 12 June 2007, which stated:

> "Please note that your good vessel will be calling Iran, hence for this reason your vessel has been fixed on a back to back basis between TRC and our freight company M/s Helena Chartering of Bahamas. The fixture with Klaveness is with Helena Chartering, Bahamas. I am sending you a test message through Helena Chartering and would appreciate if you could henceforth send all messages to freight@helenachartering.com."

See Exhibit "5" annexed hereto.

16. That email suggested that the Plaintiff was aware that its voyage to Iran would violate U.S. law relating to trading with the enemy[1], and that it was trying to distance itself from that violation by using its offshore affiliate, Helena Chartering of the Bahamas. In the circumstances, RSRB wrote to WS on 26 and 31 July and 9 and 14 August to ask WS whether the Plaintiff held a

---

[1] It bears noting that the ESTC is not a "U.S. person" subject to any United States government trade sanctions, whereas Plaintiff is.



license from the U.S. Treasury Department, Office of Foreign Asset Control ("OFAC") in respect of the voyage to Iran. However, RSRB has never received an answer from WS. It therefore appears to ESTC that the Plaintiff's orders to sail the vessel with cargo to Iran, as confirmed by their letter dated 16 July, did amount to a violation of U.S. law. Since that seemingly illegal voyage was being performed when the vessel was withdrawn from the Plaintiff by ESTC, and the Plaintiff is claiming damages from that moment forward, the Plaintiff is asking this Court to assist it in trying to recover alleged lost profits that arise out of what appears to be an illegal trade.

17.  With the above in mind, and given that:

(a)  ESTC's offer remains open to the Plaintiff;

(b)  ESTC has also offered to provide the Plaintiff with a bank guarantee on the basis set out in RSRB's message to WS on 28 August;

(c)  in the absence of agreement between the parties as to form and quantum of security, those matters can be referred to the London arbitral Tribunal; and

(d)  the Plaintiff appears to have been trading illegally, in ESTC's view, the Court should vacate the Ex Parte Order as inequitable.

18.  In the event the Court determines that the Order should not be vacated, it is nonetheless the case that the sum of US$4,108,605 – which according to the Verified Complaint is the amount claimed by the Plaintiff in respect of damages – is a grossly inflated and inaccurate assessment of the loss and damage (allegedly) suffered by the Plaintiff.

19.  Further, on 9 August 2007, when the Verified Complaint supporting the Application was filed, the Plaintiff knew (and its attorneys, Hill Rivkins & Hayden LP, either knew or ought to have known) that the sum in respect of which security was sought did not accurately reflect the



Plaintiff's alleged loss and damage. In that respect, ESTC has the following comments on paragraph 11 of the Verified Complaint, which particularises the Plaintiff's alleged damage.

20. *Verified Complaint ¶ 11(c)* - The rate of hire under the charterparty dated 4 April 2007 was US$24,500 per day. Following the withdrawal on 3 July 2007, ESTC offered to re-charter the vessel to the Plaintiff at a daily rate of US$28,500, which was about the market rate for the vessel at that time. *See Exhibit "6" annexed hereto.*

21. On any view, the Plaintiff is obviously not entitled to recover a sum representing hire for the "*Balance of Charter Period*" on the basis of a rate of hire of US$36,409 in circumstances where (a) the market rate was about US$28,500 and (b) the vessel was re-offered by ESTC to the Plaintiff at the daily rate of US$28,500.

22. Therefore, even if the Plaintiff's allegation that the vessel was wrongfully withdrawn is correct (which for the avoidance of doubt is denied by ESTC), its claim would be for a "*Difference per Day*" of US$4,000, rather than for the wholly unsubstantiated sum of $11,909 pleaded in the Verified Complaint.

23. Further, nowhere has the Plaintiff explained or accounted for what earnings it might have continued to enjoy after the withdrawal: although the vessel was withdrawn, ESTC was legally obliged to continue with the voyage to Iran, which was consistent with the purpose of the charter between the Plaintiff and Helena Chartering, and it is possible and likely that the Plaintiff continued to receive profit for the voyage to Iran that it has not disclosed to this Court.

24. *Verified Complaint ¶ 11(f)* - Taking account of the foregoing analysis with regard to paragraph 11 (c) of the Verified Complaint, above, the Plaintiff's "*Total Anticipated Losses*" should more reasonably be US$1,380,000 (i.e. 345days x US$4,000), less any continued earnings, rather



than the US$4,108,605 pleaded by the Plaintiff. As such, the Plaintiff's claim has quite plainly been unreasonably expressed for the purpose of the Application.

25. *Verified Complaint ¶ 11(j)* - For the reasons set out in paragraphs 4 to 17 above ESTC has been advised that Plaintiff is not entitled to recover its costs and legal fees of this action under U.S. law (which are alleged to be US$15,000) and/or security in that respect.

26. *Verified Complaint ¶ 11(k)* - The Plaintiff's calculation of "*Monies due TRC under final hire statement*" fails to take account of the agreement between the parties which arose out of the vessel's withdrawal pursuant to which the Plaintiff agreed to pay ESTC a *quantum meruit* in respect of the completion of the voyage to Iran which was underway at the time the vessel was withdrawn. *See Exhibit "7" annexed hereto.*

27. That voyage was from Bunbury in Australia, to Bandar Imam Khomeini in Iran. At the time of the vessel's withdrawal, pursuant to the Plaintiff's voyage instructions, the vessel was en route to Bandar Imam Khomeini in Iran with a cargo of 33,455 mts Sandy Calcined Metallurgical Grade Alumina.

28. Pursuant to the parties' agreement that a *quantum meruit* would be payable by the Plaintiff in respect of the balance of the voyage, the vessel proceeded to and discharged her cargo at Bandar Imam Khomeini, before departing on 3 August 2007, and dropping the outward sea pilot at 1830 UTC the same day. The *quantum meruit* is therefore payable in respect of the period from withdrawal – 2320 on 3 July 2007 – to completion of the voyage which was then underway – 1830 on 3 August – which equates to 30 days, 19 hours and 10 minutes (or 30.798611 days). *See Exhibit "7" annexed hereto.*

29. The amount of US$28,500 per day was agreed as payable by the Plaintiff to ESTC by way of *quantum meruit* in respect of the continuing services provided by ESTC. The Plaintiff is

10



accordingly liable to ESTC for the sum of US$877,760.42 which sum completely extinguishes the monies the Plaintiff claims as due to it under the final hire statement (and leaves a balance payable to ESTC).

30. The *quantum meruit* payable by the Plaintiff to ESTC is the subject of a counterclaim by ESTC in respect of which it seeks countersecurity from the Plaintiff (see below). ESTC notes from recent correspondence received from the Plaintiff's lawyers that the Plaintiff contends that the *quantum meruit* is not payable because the Plaintiff's agreement to make that payment was "*without prejudice*" This is both disingenuous and a distortion. The agreement was "*without prejudice*" as to the Plaintiff's right to argue that the vessel should not have been withdrawn; it did not make the agreement in any way conditional and the *quantum meruit* claim is payable.

31. In view of the above, and assuming that the sum claimed in respect of the Plaintiff's English solicitor's fees is reasonable (which for the avoidance of doubt is not admitted), properly assessed, the Plaintiff's alleged loss is no more than US$1,324,804.71 (i.e. US$1,380,000 plus US$125,000 plus US$697,565.13 less US$877,760.42, less any earnings not disclosed to the Court), rather than US$4,946,170.13.

32. ESTC's primary case is that the Ex Parte Order should be vacated by the Court as inequitable and unnecessary. If, however, the Court determines not to vacate the Ex Parte Order, the Plaintiff's claim cannot under any circumstance exceed the sum of US$1,324,804.71, and the Order should be amended accordingly.

33. Given the Plaintiff's failure to pay the *quantum meruit* due to ESTC, ESTC has asserted in this proceeding and will do likewise in the London arbitration a counterclaim in the total sum of US$1,171,585.80 (inclusive of interest, costs and legal fees in the arbitration), for which it seeks countersecurity from the Plaintiff pursuant to Supplemental Admiralty Rule E(7).

34.    ESTC currently holds (in a distinct dedicated account with its bank) the sum of US$697,565.13, which essentially represents hire paid late by the Plaintiff, after ESTC's right to withdraw had accrued. Giving the Plaintiff credit for the sum, ESTC's counterclaim is already secured to this extent, thus leaving it undersecured in to the extent of US$474,020.67.

35.    ESTC therefore seeks countersecurity from the Plaintiff in the total sum of US$474,020.67.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 10th day of September 2007 at Piraeus, Greece.

_____
Hugh Maxwell Townson