# Exhibit 1

## Enston, Matthew B.

**From:** Enston, Matthew B.
**Sent:** 24 July 2007 18:28
**To:** 'James King'
**Cc:** Weller, Charles G.
**Subject:** "Apostolos II" C/P dd 04.04.07 A/C The Rice Company

We refer to our email of 20 July 2007 concerning the suspension of fixture negotiations between ESTC and TRC. We also refer to recent exchanges concerning the claim TRC purports to have against ESTC in respect of the alleged wrongful withdrawal of the vessel from TRC's service under the C/P dated 4 April 2007, which rest with our fax yesterday confirming the appointment of Mr Alec Kazantzis as ESTC's arbitrator.

1.     Following the suspension of fixture negotiations, and further to our email of 20 July, our client remains ready and willing to refund the amount due to TRC following the receipt of the late remitted funds. Please therefore provide us with details of the TRC account to which those funds should be remitted.

2.     The parties must also finalise the accounting position under the C/P, taking into account (a) the *quantum meruit* due in respect of the completion of the voyage following the withdrawal, and (b) bunkers consumed following withdrawal. Please provide us with your client's Final Hire Statement to enable our client to get the reconciliation process underway.

3.     Finally, it is obviously in both parties' interests that your client's claim is resolved sensibly, quickly, and with minimum fuss. With that in mind, and notwithstanding that your client has not yet requested security for its claim, we are instructed to inform you that ESTC is in principle prepared to provide TRC with security in the form of an ESTC letter of undertaking, subject to agreement between the parties as to the terms of that LoU and on quantum. In the absence of such agreement, with a view to avoiding any unnecessary expense and delay in connection with the provision of security, ESTC would be prepared to refer to the Tribunal for a determination.

We are also instructed to inform you that ESTC is willing in principle to replace the LoU with a bank guarantee in the event TRC obtains an award in its favour in the arbitration and ESTC appeals that award (and for appropriate provision to be made in that respect in the LoU).

Naturally, this email and the prospective/actual provision of security is without prejudice to ESTC's position (as set out in our and our client's various messages to you and your client) that it was entitled to withdraw the vessel, and that it therefore has no liability whatsoever to your client.

This message is open and we reserve ESTC's right to refer to the proposals made herein as may be necessary.

We look forward to hearing from you.

Regards,

**Charles Weller/Matthew Enston**
Partner/Solicitor
Shipping Group
Reed Smith Richards Butler LLP
Beaufort House
15 St. Botolph Street
London EC3A 7EE
T: +44 (0) 20 7247 6555
F: +44 (0) 20 7247 5091
CWeller@reedsmith.com/MEnston@reedsmith.com
www.reedsmith.com

1

**Exhibit 2**

# Winter Scott
## Solicitors

St Olave's House
Ironmonger Lane
London EC2V 8EY
Telephone: + 44 (0)20 7367 8989
Fax: + 44 (0)20 7726 2371
DX: 42602 Cheapside
E-mail: firstinitialsurname@winterscott.co.uk

## FAX TRANSMISSION

| | |
|---|---|
| DATE: | 24th August 2007 |
| TO: | 7247 5091 |
| | Reed Smith Richards Butler |
| | Charles Weller Esq./Matthew Enston Esq. |
| YOUR REF: | CGW/MBE/730368.00016 |
| FROM: | James King |
| OUR REF: | JCK/nma/78-134 |
| NO. OF PAGES: | 2 |

CONFIDENTIALITY NOTICE: This facsimile is intended only for the addressee. It may contain privileged and/or confidential information. If you are not the intended recipient please inform us on the above telephone number immediately and do not disclose the contents or take copies.

Re: "APOSTOLOS II" - C/P dated 4th April 2007

Thank you for your e-mail earlier today.

The writer was dealing with other pressing matters this afternoon, and had not yet had an opportunity to return your call before receiving your e-mail; you had not indicated in the message you left that you considered the matter to be urgent.

You express surprise that our Clients have filed a Rule B Attachment against your Clients in respect of the claim against them, on the basis that your Clients had previously made an offer of security.

However, as you will no doubt appreciate, our Clients did not consider that a letter of undertaking from your Clients themselves, not being countersigned by a first class bank, offered much comfort to them.

Your suggestion that your Clients' letter of undertaking be replaced by a bank guarantee should your Clients appeal an Award made against them, also did not provide much comfort to our Clients, since had your Clients failed to provide a bank

Partners: Glenn Winter Ken Scott Michael Ellis Damian Wilkes Tim Houghton James King Graeme Lloyd
Associates: Richard Verney (not admitted)
Regulated by the Law Society                                                            VAT No GB 819 4174 18

guarantee, all our Clients would have been left with was a damages claim for breach of an agreement to do so.

If your Clients are willing to provide security that is actually of value to our Clients, we can take instructions from our Clients as to whether, for example, a Club Letter, or a bank guarantee from a first class bank, might be acceptable to them.

Yours faithfully

WINTER SCOTT

# Exhibit 3

# ReedSmith
# Richards Butler

**FAX TRANSMITTAL**

**From: Charles G Weller**
Direct Phone: +44 (0)20 7772 5771
Email: CWeller@reedsmith.com
Date: 28 August 2007

Reed Smith Richards Butler LLP
Beaufort House
15 St Botolph Street
London EC3A 7EE
Phone: +44 (0)20 7247 6555
Fax: +44 (0)20 7247 5091
DX1066 City / DX18 London
Direct Fax: +44 (0)20 7539 5112

SENT

**Total Number Of Pages Including Cover Page 2**

| | |
|---|---|
| To | James King |
| Company | Winter Scott Solicitors |
| Fax | 020 7726 2371 |

Our Ref/   730368.00016
Your Ref/   JCK/nma/78-134

**URGENT**

mv "Apostolos II" C/P dd 04.04.07- withdrawal dispute and voyage to Iran

We refer to your fax of Friday night.

The excuses for failing to return our calls are lame. In our telephone messages we did not use the word "urgent". We did, however, ask that you telephone us back "as soon as possible". In any event, would the fact that three attempts to contact someone by telephone in short succession not suggest to a reasonable person that there was a matter that needed to be discussed without delay?

Surprise was expressed in our email because, as you are aware, ESTC were (and remain) content to provide TRC with a bank guarantee in a reasonable sum to secure the claim they assert. This was made quite clear in our unanswered e-mail to you of 24 July 2007, some two weeks before you instructed Hill Rivkins to apply for security in the US. If you or your clients had any misgivings about the security proposal then on the table, it is perverse for you to run off to the SDNY to make an expensive application rather than to take the basic professional and reasonable courtesy of responding to our email.

You have also failed to explain why the security proposed was actually of no comfort to TRC. Perhaps that is hardly surprising, because there is in fact no good reason at all. We note that whilst TRC asked ESTC to take on substantial exposure by accepting a TRC letter of undertaking in respect of their orders to deliver cargo in Iran without the presentation of original bills of lading, they are not prepared to take a similar letter from ESTC. It is unreasonable, for example, that TRC should expect to give a letter for the delivery of the cargo in Iran, without counter-signature by any bank, yet expect ESTC to provide a bank guarantee to them for a speculative claim for wrongful withdrawal of the ship from charter.

TRC can have no reason whatsoever to suppose that ESTC would renege on an undertaking either to meet an adverse Award or to provide the bank guarantee to secure it whilst it was under appeal in

reedsmith.com

Reed Smith Richards Butler LLP is a limited liability partnership registered in England and Wales with registered number OC303620 and its registered office at Beaufort House, Tenth Floor, 15 St Botolph Street, London EC3A 7EE. Reed Smith Richards Butler LLP is regulated by the Solicitors Regulation Authority. A list of the members of Reed Smith Richards Butler LLP, and their professional qualifications, is available at the registered office. The term partner is used to refer to a member of Reed Smith Richards Butler LLP or an employee of equivalent standing.

Reed Smith Richards Butler LLP is associated with Reed Smith LLP of Delaware, USA and the offices referred to below are offices of either Reed Smith Richards Butler LLP or Reed Smith LLP.

NEW YORK ♦ LONDON ♦ CHICAGO ♦ PARIS ♦ LOS ANGELES ♦ WASHINGTON, D.C. ♦ SAN FRANCISCO ♦ PHILADELPHIA ♦ PITTSBURGH ♦ OAKLAND
MUNICH ♦ ABU DHABI ♦ PRINCETON ♦ NORTHERN VIRGINIA ♦ WILMINGTON ♦ BIRMINGHAM ♦ DUBAI ♦ CENTURY CITY ♦ RICHMOND ♦ GREECE

8/28/07 10:34 AM

accordance with the offer. They have no evidence, for there is none, of ESTC's non-payment of an adverse arbitration award, nor of meeting any obligations secured by an undertaking. Neither do they have any reason to suppose that ESTC are any less jealous of their reputation within the market place than are TRC. Beyond that, even if TRC's worst fears were realized and they were left with a damages claim for breach of agreement, they would still have recourse to the action they have so recently taken.

The proposed mechanism of deferring the provision of a bank guarantee is not uncommon and its merit is to ensure that by the time the bank guarantee thus provided (and its cost) can properly reflect the value of TRC's claim, at least as reasoned by the Tribunal, and thereby be measured and reasonable. The apparently Verified Complaint filed in support of the application for a Rule B attachment in New York cannot possibly be considered measured or reasonable, not least because reference should have been made to the facts that (a) the ship was offered to TRC at a market rate differential of US$4,000 per day, (b) TRC agreed to pay a *quantum meruit* for the completion of the voyage to Iran which (even discounting the US$4,000 per day differential) entirely extinguishes monies due under the final hire statement referred to in paragraph 11 (k) of the Verified Complaint, and (c) that an offer of reasonable security had been made to TRC some two weeks earlier, which even if unacceptable in the form proposed had not been answered, explored further or even rejected in an effort to find agreement.

The fact is that ESTC offered security to TRC in order that the issues arising from the withdrawal of the ship could be discussed and settled reasonably, straight-forwardly, without rancour, without business interruption and without the matter of security being adopted as a weapon in the cause. It is quite clear that TRC have made this unconscionable move in an attempt to increase their bargaining leverage. That was a miscalculation.

If TRC are adamant that it is absolutely necessary to have urgent security for their claim in the form of a bank guarantee, then ESTC are content to provide the same forthwith against TRC undertaking to answer for the costs of the same from the date of establishing it until the date of payment of an adverse award or settlement or until the date of either party filing an application to appeal the award. In the alternative, ESTC are content to repeat their earlier offer of an ESTC letter of security, first made over a month ago, which they propose as reasonable or, to join with TRC in an invitation to the arbitration Tribunal, now constituted, to order on security (i) as to wording, (ii) as to form and (iii) as to amount, in the absence of agreement on these points between the parties.

In any event, it must on any reasonable view be inappropriate for TRC to continue with their inexplicable proceedings in the United States. We therefore look forward to your urgent confirmation that those proceedings will be withdrawn forthwith.

Finally, whilst writing, we note that neither have we had any response to our email of 22 August relating to the final accounting position under the charter. We look forward to hearing from you on that as well, as a matter of urgency.

Regards

Charles Weller
Partner
Shipping Group

**If you do not receive all of the pages, please call Debbie Green at +44 (0)20 7772 5771.**

PLEASE NOTE: The information contained in this facsimile message may be privileged and confidential, and is intended only for the use of the individual(s) or entity named above who has been specifically authorised to receive it. If the reader is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return all pages to the address shown above. Thank you.

-2-

8/28/07 10:34 AM

# Exhibit 4

28. Aug. 2007 18:43                                              No. 2795   P. 1   D/D


# Winter Scott
### Solicitors

St Olave's House
Ironmonger Lane
London EC2V 8EY
Telephone: + 44 (0)20 7367 8989
Fax: + 44 (0)20 7726 2371
DX: 42602 Cheapside
E-mail: firstinitialsurname@winterscott.co.uk

## FAX TRANSMISSION

| | |
|---|---|
| DATE: | 28th August 2007 |
| TO: | 7247 5091 |
| | Reed Smith Richards Butler |
| | Charles Weller Esq./Matthew Enston Esq. |
| YOUR REF: | CGW/MBE/730368.00016 |
| FROM: | James King |
| OUR REF: | JCK/nma/78-134 |
| NO. OF PAGES: | 2 |

CONFIDENTIALITY NOTICE: This facsimile is intended only for the addressee. It may contain privileged and/or confidential information. If you are not the intended recipient please inform us on the above telephone number immediately and do not disclose the contents or take copies.

Re: "APOSTOLOS II" - C/P dated 4th April 2007

Thank you for your fax earlier today.

Firstly, the writer was not aware that you had called three times, only once. This certainly did not indicate any sense of urgency.

Secondly, it remains our Clients' position that the security previously offered by your Clients, which was not suggested to be countersigned by any bank, was wholly unacceptable. Contrary to your assertion, a bank guarantee was only offered if your Clients appealed an Award against them.

Our Clients were under no obligation to advise the Court that your Clients had previously offered security. Consequently, our Clients' New York Attorneys have advised that there is no realistic prospect of the Court vacating the attachment on that basis.

As regards the other points raised, our Clients take the view that the offer to charter the vessel back to them at an increased rate was not a reasonable offer, since to it were attached unreasonable conditions, not the least of which was the bizarre suggestion

Partners: Glenn Winter Ken Scott Michael Ellis Damian Wilkes Tim Houghton James King Graeme Lloyd
Associates: Richard Verney (not admitted)
Regulated by the Law Society                                                                  VAT No GB 819 4174 16

that our Clients advise your Clients if your Clients did not receive the funds by the due date. We see little prospect of your Clients' mitigation attempts succeeding.

As to the quantum meruit, our Clients did not unconditionally agree to your Clients' proposals; in fact, our Clients only agreed *"without prejudice, while saving all ohrts rights in the same manner we did before, on account of the wrongful withdrawal of the vessel."*

Therefore, the most that can be said is that our Clients only agreed to pay a quantum meruit if your Clients could successfully show that they validly withdrew the vessel. If they cannot show this, no quantum meruit is payable at all.

In any event, even if a quantum meruit is payable unconditionally (which is denied), if your Clients fail to show that they validly withdrew the vessel, our Clients would of course also have a claim for the excess amount (US$4,000) for the quantum meruit period; this is a further claim of US$123,194.44.

We note that your Clients are now prepared to put up a bank guarantee by way of security, subject to our Clients paying for the cost of this. This condition is unacceptable, but if your Clients still wish to see the attachment lifted, please confirm that they are prepared to offer a bank guarantee without this condition, and also advise us of the name of the intended bank. We can then take instructions.

Yours faithfully

WINTER SCOTT

# Exhibit 5

```
Print For: hmt
Type.....: Email - Internet
Msg.Nr...: IN 1641325
Created..: 12-Jun-2007 09:56
From.....: "Apostolos II" <apostolosii@gtsh
Subject..: RE: MV Apostolos II - test Message
Comment..: Rcvd: (CPID:8/SBCS:1)
```

Dear Sumit,

Your msg safe rcvd and dully noted. All msg will be sent tp Helena.

Mntks and brgds,
Capt. Marin

---

From: Sumit Bose [mailto:sumitb@helenachartering.com]
Sent: Tuesday, June 12, 2007 8:31 AM
To: MV Apostolos II
Cc: freight@helenachartering.com
Subject: MV Apostolos II - test Message

Capt. Marin,

Good day!
Please note that your good vessel will be calling Iran, hence for this reasons your vessel has been fixed on a back to back
basis between TRC and our freight company M/s. Helena Chartering of Bahamas. The fixture with Klaveness is with Helena
Chartering, Bahamas. I am sending you a test message through Helena Chartering and would appreciate if you could henceforth send
all messages to freight@helenachartering.com

Thanks in advance.

I shall call you a little later.

Best regards,
Sumit Bose
The Rice Company - Chartering
As agents to Helena Chartering, Bahamas
Tel: +1 916 960 1238 (office direct)
Mob: +1 916 316 8515
sumitb@helenachartering.com

**Weller, Charles G.**

| | |
|---|---|
| From: | Weller, Charles G. |
| Sent: | 26 July 2007 11:03 |
| To: | 'jking@winterscott.co.uk' |
| Cc: | Enston, Matthew B. |
| Subject: | "Apostolos II" - voyage to Iran |

Previous correspondence refers. Since reviewing the papers we have noted a concern regarding your clients' orders for the ship to proceed to BIK on which we need your urgent clarification.

As The Rice Company and its staff are domiciled in the US, they will be aware that they are subject to the Executive Orders of The US Department of Treasury Office of Foreign Asset Control, one of which prohibits the facilitation by US entities and citizens of trading to Iran, including chartering.

Unless you can confirm to us that the voyage to BIK, which is still being performed, was licensed by OFAC, then its performance appears to violate US law.

In the circumstances, please urgently clarify the position. In the meantime, obviously all ESTC's rights must be reserved.

Regards


Charles Weller
Partner
Shipping Group
Reed Smith Richards Butler

1

**Exhibit 6**

From: Express Sea Transport Corp, Piraeus

To:   The Rice Company USA, c/o brokers

Without prejudice
==================

Dear sirs,

APOSTOLOS II - t/c dd April 4th, 2007
a/c The Rice Company, USA
========================================

We refer this matter. We have, overnight, received a fax message from solicitors purporting to be instructed on your behalf. If they are indeed instructed by you, you shall be aware of the content of their fax.

The withdrawal of the vessel from your service on July 3rd, 2007 could not, we think, have been more clearly stated by us. It has subsequently been re- affirmed on a number of occasions. We cannot, therefore, understand what possible grounds the solicitors could have for thinking we would somehow regard the vessel as remaining on charter and give them a confirmation of that.

We have indicated why we consider we were entitled to withdraw the vessel from your service, namely Cl.5 failures. If you maintain a strong belief that owners were wrong on the point, or somehow failed to follow a 'correct' procedure for exercising that right, then there is clearly a point in issue between us and you will be able to express your point of view in settlement discussions between us or in submissions to an arbitrator. But you must surely be aware that we are not proceeding in the absence of legal advice and the we are confident of our position.

We are now liaising with the vessel's owners and cargo interests for the completion of the currently contracted cargo voyage.

The solicitors have made a reservation of your position to treat the owner's position as repudiatory and 'to take immediate legal action against (us) without further notice or warning.' We would mention in passing our surprise that they assert such detailed requirements for a notice of withdrawal but apparently would not measure with the same measure notice for resolving issues in dispute between the parties.

Beyond that, we would have thought an assertion against us of 'repudiatory breach of the charter' is otiose. As to prospective legal action, if you feel you have suffered damages from the withdrawal of the vessel and you wish to assert a claim in respect of the same that will presumably be dealt with by agreement between us in correspondence, in settlement discussions or, in the absence of mutual agreement between us, in arbitration. We do not believe you can reasonably be concerned as to the settlement of any agreement or award, but if this indeed proved to be an issue then we would be content to discuss first of all the grounds for any concern and if necessary the provision of resonable

1

security for any reasonably estimated claim you consider you may have. In the event that your solicitors recommend taking aggressive legal action against any assets in which ESTC has an interest, then you must notify them and any court of our 'in principle' willingness to offer security as above.

In any case we do not see that you can or will suffer significant substantial damages. The position was discussed in without prejudice discussions between the parties ahead of the last weekend. It is open to you to charter-in alternative substitute tonnage, the changes in the market are only modest.
Indeed, in this regard, we would be content, for the purpose of ensuring a cap on any damages you may sustain, to re-offer to you the vessel at a daily rate of hire of US $28,500/day, effective immediately, for a period to min March 12th 2008, / max June 12th, 2008 with other terms as per the 04/04/07 charter (and subject to a minor revision of the hire payment details to clarify charterers' payment obligations for the purpose of avoiding a recurrence of the issues which resulted in the withdrawal of the vessel under the 04/04/07 charter, and the previous instances of late payment). In the event that you decline this offer, ESTC reserves the right to refer to it openly as being relevant to the recovery of any damages that the Charterers have threatened to pursue.

In this regard we look forward to hearing from you at your earliest convenience and in any case before 18.00hrs London (BST) July 12th, 2007

Kind regards
Hugh Townson
ESTC/Piraeus
+30 210 458 4916
==================


Charles Weller
Partner
Shipping Group
Reed Smith Richards Butler LLP
Direct line +44 (0) 20 7772 5771
Direct fax + 44 (0) 20 7539 5112
Mobile + 44 (0) 7710 082 173
Beaufort House
15 St. Botolph Street
London EC3A 7EE
T: +44 (0) 20 7247 6555
?: +44 (0) 20 7247 5091
www.reedsmith.com


-----Original Message-----
From: xprotect@hol.gr [mailto:xprotect@hol.gr]
Sent: 11 July 2007 14:07
To: Weller, Charles G.
Cc: EXPRESS SEA TRANSPORT CORP
Subject: APOSTOLOS II - t/c dd April 4th, 2007

TO..: "REED SMITH RICHARDS BUTLER LLP" (and others)
ATTN: Mr. Charles Weller
FROM: "Express Protection Services S.A."<xprotect@hol.gr>
DATE: 11-JUL-2007 16:06
MSG.: 450694

-------- Recipients: ----------
TO: REED SMITH RICHARDS BUTLER LLP // Mr. Charles Weller
CC: EXPRESS SEA TRANSPORT CORP
------------------------------------

From: Express Sea Transport Corp, Piraeus

2

**Exhibit 7**

**Weller, Charles G.**

| | |
|---|---|
| From: | g.ventouris@capitalmaritime.com |
| Sent: | 14 July 2007 20:26 |
| To: | Weller, Charles G. |
| Subject: | Fw: SPAM->apostolos ii/trc |

Following just received

Sent via BlackBerry® from TIM

-----Original Message-----
From: Nikola Masanovic <operations@curzonmaritime.com>

Date: Sat, 14 Jul 2007 20:05:40
Subject: SPAM->apostolos ii/trc


From: Curzon Maritime Ltd, London - Operations - TEL +44 20 7488 1208
      Greece - Tel +30 210 458 4800

Date: 7/14/2007
Time: 8:05:40 PM
RefNum: NPM12951331

GV/NM

FOLL RCVD

QUOTE

Date: Sat, 14 Jul 2007 15:09:06 +0200

m.v. APOSTOLOS II - TRC cp dd 04/04/07

FROM CHRRS

QUOTE

Gd evening

Further our last phone call, pls kindly pass fllwng answer to owners

QUOTE
"WITHOUT PREJUDICE

Charterers refer to Owners' message as copied below.

Charterers are extremely disappointed that Owners refuse to accept the clear and documented facts of this matter. This is not a dispute that Owners can possibly hope to win.

Nevertheless, Charterers are reluctantly prepared to accept Owners' proposal, namely an increase in the daily hire rate to US$28,500, effective immediately, with a minimum charter period up to 12 March 2008, and a maximum charter period up to 12 June 2008, with all other terms to be as per the charter dated 4 April 2007.

Of course, Charterers' acceptance of Owners' proposal is strictly without prejudice to all their rights whatsoever, which are expressly reserved, in particular their right to argue that Owners illegitimately withdrew the vessel from Charterers' service.

1

Charterers look forward to receiving Owners' confirmation that they are now instructing the Master to follow Charterers' orders, which is to be confirmed to all involved parties contacted in the original message from the Master, via telex, no later than Saturday July 14th 0800 hs California time.

Kind regards

UNQUOTE

BRGDS

2