UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| THE RICE COMPANY, | : |
| Plaintiff, | : |
| | : |
| vs. | : Index No.: 07 Civ. 7077 (WHP) |
| | : |
| EXPRESS SEA TRANSPORT CORPORATION, | : |
| Defendant. | : |

---

**PLAINTIFF THE RICE COMPANY'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MOTION TO VACATE OR REDUCE THE
ORDER FOR ATTACHMENT AND FOR COUNTERSECURITY**

HILL RIVKINS & HAYDEN LLP
*Attorneys for Plaintiff The Rice Company*
45 Broadway, Suite 1500
New York, New York 10006
Tel: (212) 669-0600
Fax: (212) 669-0699

By:    Keith B. Dalen (KD-4997)
       Thomas E. Willoughby (TW-4452)
       Christopher M. Panagos (CP-2199)

## TABLE OF CONTENTS

**PAGE NO.**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     ii

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     1

POINT I:     THE ULTIMATE BURDEN OF PROOF ON THIS
MOTION RESTS WITH ESTC TO SHOW WHY
THE ATTACHMENT SHOULD BE VACATED . . . . . . . .     2

POINT II:     DEFENDANT'S CONDUCT BEFORE, DURING
AND AFTER THE VOYAGE TO IRAN BARS A
CLEAN HANDS DEFENSE AND VACATUR . . . . . . . . . .     6

POINT III:     REFUSAL OF PRIOR OFFER OF SECURITY IS
NOT AN EQUITABLE GROUND TO VACATE
AN ATTACHMENT WHERE THE SECURITY
OFFERED HAS NO COLLATERAL AND IS NOT
IN AN APPROVED FORM . . . . . . . . . . . . . . . . . . . . . . . . . .     11

POINT IV:     DEFENDANT HAS FAILED TO SHOW GOOD
CAUSE WHY THE AMOUNT OF THE ORDER
OF ATTACHMENT SHOULD BE REDUCED . . . . . . . . . .     15

POINT V:     THE COURT SHOULD NOT AWARD COUNTER-
SECURITY WHERE ESTC ADHERES TO A
RESTRICTED APPEARANCE AND WHERE TRC
HAS YET TO ATTACH ANY OF ESTC'S PROPERTY . . . .     19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     21

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Afram Lines Intern., Inc. v. M/V Capetan Yiannis,*
    905 F.2d 347 (11th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.,*
    460 F.3d 434 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-5,
                                            10-13

*Barr Rubber Products Co. v. Sun Rubber Co.,*
    425 F.2d 1114 (2d Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Bay Casino LLC v. M/V ROYAL EMPRESS,*
    1999 U.S. Dist. LEXIS 22357 (E.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . 8, 19

*BBS Norwalk One, Inc. v. Raccolta, Inc.,*
    117 F.3d 674 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Blake Maritime Inc. v. Petrom S.A.,*
    2005 WL 2875335 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*Chiquita Int'l Ltd. v. Liverpool & London S.S. Mutual P&I Assoc. Ltd.,*
    124 F.Supp.2d 158 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Dongbu Express Co. v. Navios Corp.,*
    944 F.Supp 235 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 18

*Expert Diesel, Inc. v. Yacht 'Fishin Fool',*
    627 F.Supp. 4323 (S.D.Fla. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Express Sea Transport Corp. v. Novel Commodities S.A.,*
    06-cv-2404 (GEL) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Flame Maritime Ltd. v. Hassan Ali Rice Export Co.,*
    2007 WL 2489680 (S.D.N.Y. Aug. 31, 2007) . . . . . . . . . . . . . . . . . . . . . . . 3, 7-8

*Goudy & Stevens, Inc. v. Cable Marine, Inc.,*
    665 F.Supp. 67 (D.Me. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Compania Naviera Marasia S.A.,*
    466 F.Supp. 900 (S.D.N.Y. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ii.

*Keystone Driller Co. v. Gen. Excavator Co.,*
    290 U.S. 240 (1933) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Koch Refining Co. v. M/V JENNIFER BOUDREAU,*
    1993 WL 92515 (E.D.La. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Maersk, Inc. v. Neewra, Inc.,*
    443 F.Supp.2d 519 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Mardas Marmara Deniz Isletmeciligi A.S. v. Fast Shipping & Trading Co.,*
    07-cv-179(PKL), 2007 WL 2229058 (S.D.N.Y. Aug. 2, 2007) . . . . . . . . . 3

*McKennon v. Nashville Banner Pub. Co.,*
    513 U.S. 352 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*OGI v. RPLogistics,*
    2007 WL 1834711 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*PenneCom B.V. v. Merrill Lynch & Co.,*
    372 F.3d 488 (2d. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Rainbow Line, Inc. v. M/V Tequila,*
    480 F.2d 1024 (2d Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Result Shipping Co., Ltd. v. Ferruzzi Trading USA Inc.,*
    56 F.3d 394 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Sea Transp. Contractors, Ltd. v. Indus. Chemiques du Senegal,*
    411 F.Supp.2d 386 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*The Copperfield (Aktieselskabet Dea v. Wrightson),*
    26 F.2d 175 (5th Cir. 1928) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*The Fifeshire,*
    11 F. 743 (D.La. 1882) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Thyssen, Inc. v. M/V SENA DENIZ,*
    2000 WL 1772652 (E.D.La. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Tide Line, Inc. v. Eastrade Commodities, Inc.,*
    2006 WL 4459297, 2007 A.M.C. 252, 255 (S.D.N.Y. 2006) . . . . . . . . . . 3

iii.

*Transportes Navieros y Terrestes, S.A. de D.V. v. Fairmount Heavy Transport N.V.,*
      2007 WL 1989309 (S.D.N.Y. July 6, 2007) . . . . . . . . . . . . . . . . . . . . . . . .  3-4


*Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Limited,*
      475 F.Supp. 2d 275 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

## Statutes and Rules

9 U.S.C. §8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4-5

9 U.S.C. §201, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4-5

Fed. R. Civ. P. Supplemental Admiralty & Maritime Rule B . . . . . . . . . . . .  11-12, 20

Fed. R. Civ. P Supplemental Admiralty & Maritime Rule E . . . . . . . . . . . . .  20

      E(4)(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 4, 10, 16

      E(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

      E(7)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6, 19

      E(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

S.D.N.Y. Local Rule 65.1.1(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

## Other Authorities

*Wright & Miller*, 5C Fed. Practice & Procedure §1397 . . . . . . . . . . . . . . . . .  20

iv.

## STATEMENT OF FACTS

1.      On April 4, 2007, The Rice Company (hereinafter "TRC") entered into a time charter with disponent owner Express Sea Transport (hereinafter "ESTC") for the M/V APOSTOLOS II for a period of "about 11 months to about 13 months in charterers' option." (*See* Charter Party, Attachment to Verified Complaint).

2.      On the second voyage under the said charter party, TRC sub-chartered the vessel to Helena Chartering who sub-chartered the vessel to Bulk-Handling who then sub-chartered her to BHP-Billiton. (Declaration of Diego Garat, dated 9-25-07, ¶4).

3.      BHP-Billiton loaded a cargo of bulk Australian alumina at Bunbury, Australia on June 25 and 26, 2007. (Garat Decl. ¶4).

4.      On July 3, 2007 ESTC gave TRC notice that the former was canceling the charter while the vessel was underway bound for Iran. (Garat Decl. ¶5).

5.      ESTC and TRC entered into a separate agreement to complete the voyage. (Garat Decl. ¶5).

6.      On July 17, 2007 TRC demanded arbitration. (Garat Decl. ¶17).

7.      The vessel discharged the cargo at Bandar Imam Khomeini between July 20 and August 3, 2007.

1

8.    On August 9, 2007 TRC filed a summons and complaint in the Southern District of New York against ESTC and moved for Process of Maritime Attachment and Garnishment pursuant to Admiralty Rule B.

9.    On August 28, 2007, the Order of Attachment was granted.

10.    To date no funds have been attached.

The Court is referred to the Declaration of Diego Garat and the exhibits appended thereto for further and more detailed facts.

## POINT I

### THE ULTIMATE BURDEN OF PROOF ON THIS MOTION RESTS WITH ESTC TO SHOW WHY THE ATTACHMENT SHOULD BE VACATED

Supplemental Rule E(4)(f) provides: "Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." Fed.R.Civ.P. Supp. Rule E(4)(f).  As stated by the Court of Appeals in *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006), to uphold an attachment the plaintiff must prove: "(1) it has a valid prima facie admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's property may be found within the district;

2

and (4) there is no statutory or maritime law bar to the attachment." As to the first prong: "[T]o show that it has a valid *prima facie* claim, a plaintiff seeking a maritime attachment need not provide any supporting evidence; its complaint should suffice." *Transportes Navieros y Terrestes, S.A. de D.V. v. Fairmount Heavy Transport N.V.*, 2007 WL 1989309, *4 (S.D.N.Y. July 6, 2007) (quoting *Tide Line, Inc. v. Eastrade Commodities, Inc.*, 2006 WL 4459297, 2007 A.M.C. 252, 255 (S.D.N.Y. 2006)).

In addition to the above, three equitable grounds exist for the vacating of an attachment. "[A] district court may vacate the attachment if the defendant shows at the Rule E hearing that 1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise." *Aqua Stoli*, 460 F.3d at 445.

In order to vacate an attachment on these additional equitable grounds, the defendant bears the burden of proof. *Aqua Stoli*, 460 F.3d at 445, n. 5; *Flame Maritime Ltd. v. Hassan Ali Rice Export Co.*, 07-cv-4426(WHP), 2007 WL 2489680, *2 (S.D.N.Y. Aug. 31, 2007) ("party seeking to vacate attachment on equitable grounds bears the burden of demonstrating sufficient security exists for potential judgment") (citing *Mardas Marmara Deniz Isletmeciligi A.S. v. Fast Shipping & Trading Co.*, 07-cv-179(PKL), 2007 WL 2229058, *4 (S.D.N.Y. Aug. 2, 2007)).

3

It is not clear that Rule E(4)(f), which contemplates a post-attachment hearing, is applicable in this instance, since no funds or other property of ESTC have been attached as of yet. *See*, *Aqua Stoli*, 460 F.3d at 445 ("the defendant has an opportunity under Rule E(4)(f) to appear before the district court to contest the attachment once its property has been restrained"); *Transportes Navieros y Terrestes*, 2007 WL 1989309 ("Rule E(4)(f) permits the defendant an opportunity to appear before the Court to contest the attachment once its property has been restrained by the maritime attachment order").   Nevertheless, in a Rule E(4)(f) proceeding this Court has previously considered the full amount of the attachment order where less that that amount has been attached. *See*, *Flame Maritime*, 2007 WL 2489680 (where the attachment order authorized attachment up to $150,000 and where only $120,200 was attached, the Court considered the full amount of the order and reduced security).

In any event, under the standards of Rule E(4)(f) and *Aqua Stoli*,  TRC has proven that it is entitled to an Order for attachment in the amount claimed.  It has a classic maritime claim, arising from the wrongful withdrawal of the vessel M/V APOSTOLOS II from service by ESTC.  *Rainbow Line, Inc. v. M/V Tequila*, 480 F.2d 1024, 1027-1028 (2d Cir. 1973) (maritime lien arises in favor of time charterer and against owner for breach of charter and wrongful withdrawal of vessel from service).  It should be noted that the merits will be decided in a pending London arbitration pursuant to the terms of the charter party contract between TRC and ESTC.  Nonetheless, the attachment remedy under Rule B is explicitly made available to TRC and similarly situated plaintiffs by the terms of the Federal Arbitration Act and the New York Convention on the Recognition

4

and Enforcement of Foreign Arbitral Awards (9 U.S.C. §8; 9 U.S.C. §201, *et seq.*). *See also*, *Result Shipping Co., Ltd. v. Ferruzzi Trading USA Inc.*, 56 F.3d 394, 399 (2d Cir. 1995) ("the statute plainly allows a plaintiff…to invoke the admiralty jurisdiction of federal courts to attach the defendant's property…and at the same time to have the merits of the dispute resolved in arbitration").  In fact, ESTC had itself recently sought to invoke this remedy.  *Express Sea Transport Corp. v. Novel Commodities S.A.*, S.D.N.Y. Docket No. 06-cv-2404 (GEL).

The complaint alleges that ESTC is not found within the district, as evidenced by the Declaration of Andrew R. Brown submitted in conjunction with TRC's complaint. (Declaration of Andrew R. Brown, Docket Entry 3, dated 8-13-07).  Moreover, ESTC admits that it is not found within the district and claims to have enter a "restricted" appearance to defend the attachment only, without otherwise submitting to the personal jurisdiction of this Court. (ESTC Notice of Restricted Appearance, Docket Entry 10, dated 9-18-07).  Nor does ESTC allege that the other requirements to uphold the attachment pursuant to Rule B have not been met.  It has merely put plaintiff to its proofs, which TRC submits it has met.

Thus, to evaluate ESTC's arguments that the attachment should be vacated, the Court need only consider the three additional equitable grounds, discussed above, in *Aqua Stoli*.  In particular, ESTC claims that its prior offers of security should preclude TRC's right to maritime attachment, and that since the vessel called in Iran once during the course of what should have been many voyages under the charter, TRC may not

invoke the remedy of maritime attachment. ESTC cannot meet its burden to show why the attachment order should be vacated or reduced and is discussed more fully in points II-IV below.

**POINT II**

**DEFENDANT'S CONDUCT BEFORE, DURING AND AFTER THE VOYAGE
TO IRAN BARS A CLEAN HANDS DEFENSE AND VACATUR**

Defendant, ESTC, has chosen to devote more attention to this Point than any other in its Memorandum. That is unfortunate and misguided for many reasons:

1)      If there was a violation of any executive order or other act, which is denied, that does not descend to the level of constituting "unclean hands".

2)      The arrangements for the so-called "quantum meruit" voyage to Bandar Imam Khomeini were arrived at jointly and directly between ESTC and TRC after the former wrongfully withdrew the vessel.

3)      ESTC itself has also applied to this Court pursuant to Rule E(7)(a) to secure a claim arising from this same allegedly "illegal voyage".

4)      As a time charterer of the vessel prior in time to the charter with TRC, ESTC had more power to direct the ship's movements than TRC did. The fact that ESTC was able to take the ship away from TRC more than amply demonstrates this fact.

5)      The defendant states that "[t]he Order should be vacated . . .", but in not one case in the litany it offers was an attachment vacated.

6)      In only three of the ten cases cited by ESTC was even a partial reduction granted by the Court.

Turning to the citations set forth in defendant's POINT II with regard to the last observation, and in particular, *Flame Maritime*, a case decided only months ago, this Court stated:

> The Order authorizes Flame to attach up to $150,000 of Hassan's assets.  That amount exceeds the $55,988 plus £4,800 awarded in the Pakistani action.  Flame claims that the difference comprises the interest that has accrued since the entry of the Arbitration Award.  However, the Pakistani High Court excluded interest, and Flame has not appealed. Because Flame stands to recover no more than the Pakistani Judgment, this Court will reduce the attachment amount to reflect the maximum award that Flame can recover in those proceedings.

2007 WL 2489680 at *2.  Vacatur was denied and a reduction ordered but only to the extent of the interest which the Pakistani High Court had specifically denied the plaintiff.

The *Flame* case could hardly be more inapposite to the facts in the case at bar, but one observation in the opinion could not be more applicable: the ". . .party seeking to

> posted.  The plaintiff may be excused from posting a
> counter-security "for cause shown."
>
> In this case, the Court finds defendants' requests for a
> counter-security unmerited.  Defendants have never posted
> a security on plaintiff's original claims.  Thus, requiring
> plaintiff to post a security does not place the parties on
> equal footing as the rulemakers intended.

1999 U.S.Dist. LEXIS 22357 at *11.

The third and last of the only reduction cases cited is *Dongbu Express Co. v. Navios Corp.*, 944 F.Supp 235 (S.D.N.Y. 1996).  This case is as inapposite as the previous two in that the reduction in security granted by the Court extended only to an amount previously secured by plaintiff's attachment in Korea.

With respect to the allegation of "unclean hands", ESTC makes much of and quotes extensively from *PenneCom B.V. v. Merrill Lynch & Co.*, 372 F.3d 488 (2d. Cir. 2004), but in the very quote set forth at page 5 of its Memorandum, the Court found that the "unconscionable act" must have ". . . injured the party attempting to invoke the doctrine." *Id.* at 493.  That requirement is at complete variance with the facts in this case. Here the act under discussion, the voyage to Iran, not only did not injure ESTC, but the defendant actually benefited from it, cooperated in it and is seeking security for it.  This is reminiscent of some of the more ironic passages in "Alice Through the Looking Glass."

A closer examination of the cases dealing with the doctrine of "unclean hands" is warranted: in *PenneCom*, *supra*, the allegation was that fraudulent evidence had been

9

presented to an arbitration panel. ESTC fails to note that the issue was not even decided by the Second Circuit when it reversed the Lower Court's dismissal and remanded the case. In addition to requiring that the party invoking the doctrine must have suffered injury, the doctrine also mandates conduct that is fraudulent, deceitful or unfair. In this case, the voyage to Iran had none of these qualities and TRC also took the additional step of informing the Office of Foreign Assets Control (OFAC) of the voyage. To date, that agency has not even decided whether or not an infraction occurred. On the other hand, typical examples of what constitutes a qualifying "unconscionable act" include concealing evidence (*Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 78 L.Ed 293, 54 S. Ct. 146 (1933); misconduct in removing confidential documents from the office of one's former employer (*McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 115 S. Ct. 879 (1995); fraudulent testimony *BBS Norwalk One, Inc. v. Raccolta, Inc.*, 117 F.3d 674 (2d Cir. 1997); patent infringement (*Barr Rubber Products Co. v. Sun Rubber Co.*, 425 F.2d 1114 (2d Cir. 1970).

Penultimately, and as stated above, none of the cases cited by ESTC vacated the attachments that were at issue, including the recent decision in *Aqua Stoli*, 460 F.3d 434, where the district court's dismissal of the attachment was vacated and the case remanded. Therein, the Second Circuit rejected the ". . . the reasoning of the more recent district court decisions that have engaged in a broader Rule E(4)(f) inquiry" 460 F.3d at 445, and further stating:

> We therefore conclude that the district court erroneously
> disposed of this case when it relied on a needs test and

10

> hardship balancing at the Rule E hearing. It was sufficient to sustain the attachment that AquaStoli satisfied the requirements of Rule B. Gardner Smith's rebuttal did not establish any of the limited grounds that could justify vacatur: that it would be subject to *in personam* jurisdiction in an adjacent district, that it was located and subject to personal jurisdiction in the same district as AquaStoli, or that AquaStoli had already obtained sufficient security. Rather, Gardner Smith proffered only the legally irrelevant showing that it had substantial assets elsewhere in the world.

*Id.* at 447.

Lastly, it should be noted that there is one way in which ESTC could have the attachment vacated and that was stated by the Court in *Blake Maritime Inc. v. Petrom S.A.*, 2005 WL 2875335, *4 (S.D.N.Y. 2005):

> Accordingly, the Court will not vacate the attachment of Defendant's assets at Citibank. Nonetheless, if Petrom were willing to submit to in personam jurisdiction and to provide security for the attached property, the Court would vacate the attachment.

## POINT III

### A REFUSAL OF A PRIOR OFFER OF SECURITY IS NOT AN EQUITABLE GROUND TO VACATE AN ATTACHMENT WHERE THE SECURITY OFFERED HAS NO COLLATERAL AND IS NOT IN AN APPROVED FORM

ESTC appears to claim that its prior offers of security vitiate TRC's right as a maritime claimant to attach funds under Supplemental Rule B. This contention could only succeed under the third equitable ground discussed in *Aqua Stoli*: that "the plaintiff has already obtained sufficient security for the potential judgment, by attachment or

otherwise." 460 F.3d at 445. On this point, ESTC bears the burden of proof. *Id.* ESTC's wholly inadequate offer, backed only by its own promise to pay, is pure litigation posturing (See Towson Decl. Ex. 1 ("we reserve ESTC's right to refer to the proposals made herein as may be necessary")), and cannot defeat TRC's attachment. ESTC's position to the contrary is nothing more than a repackaged argument, rejected by the Court of Appeals in the controlling *Aqua Stoli* case, that a plaintiff seeking process of maritime attachment and garnishment under Rule B must prove and explain why it has a "need" for security.

No court has required a maritime claimant seeking security under Rule B or C to accept anything less than a bond from an approved surety, cash or the actual res as security for its claims.  While courts have noted that it is customary for cargo plaintiffs to accept letters of undertaking (LOU's) from vessels' Protection and Indemnity Clubs (P&I Clubs) in exchange for the release of vessels or other property, or in exchange for the plaintiff not attaching or arresting in the first place, nothing in law can force a plaintiff/claimant to accept such a substitute.

As stated by the Court of Appeals in *Aqua Stoli*: "The fact that Gardner Smith [the defendant] has substantial assets in another country is of no moment. Federal admiralty law allows a plaintiff to seize assets and bring suit wherever such assets may be found precisely because, while other assets may be available, plaintiffs may encounter difficulties in tracking them down. Should it wish, Gardner Smith has the option of relieving itself of this particular attachment by posting other security." 460 F.3d at 444.

Even ESTC's related company, Capital Maritime & Trading Corp., has stated in its SEC Form F-1/A, filed in pursuit of a listing on the New York Stock Exchange:

> [A] substantial portion of our assets and the assets of our directors, officers and experts are located outside of the United States. As a result, you may have difficulty serving legal process within the United States upon us or any of these persons. You may also have difficulty enforcing, both in and outside the United States, judgments you may obtain in United States courts against us or these persons in any action…
>
> Furthermore, there is substantial doubt that the courts of the Marshall Islands or Greece would (1) enter judgments in original actions brought in those courts predicated on United States federal or state securities laws or (2) recognize or enforce against us or any of our officers, directors or experts judgments of United States courts predicated on United States federal or state securities law.

(*See* www.secinfo.com/dsvrn.z3k4.htm, last visited 9-25-07). All of the above statements are equally applicable to maritime claims against ESTC, a Panamanian corporation which occupies the same head office as Capital Maritime & Trading Corp. in Piraeus, Greece.

As far as "sufficient security by attachment or otherwise" goes (the third equitable ground for vacatur in *Aqua Stoli*), Local Rule 65.1.1(b) provides, in part: "Except as otherwise provided by law, every bond, undertaking or stipulation must be secured by: (1) the deposit of cash or government bonds in the amount of the bond, undertaking or stipulation; or (2) the undertaking or guaranty of a corporate surety holding a certificate of authority from the Secretary of the Treasury…" Other courts have also advised that they will not force plaintiffs to accept letters of undertaking against their will. *Thyssen, Inc. v. M/V SENA DENIZ*, 2000 WL 1772652 (E.D.La. 2000) ("Today, the Court merely rules that it will not force an unwilling plaintiff to accept a letter of undertaking from an

unauthorized surety in lieu of a bond."); *Koch Refining Co. v. M/V JENNIFER BOUDREAU*, 1993 WL 92515, *3 (E.D.La. 2003); *See also*, *In re Compania Naviera Marasia S.A.*, 466 F.Supp. 900, 902-903 (S.D.N.Y. 1979) (court ordered LOU in place of a limitation fund pursuant to Rule F upon consent of all parties, but specifically advised that, "[i]t is the intent of this provision that any claimant have an absolute right to reject Britannia as surety, in which event this ad interim form of security comes automatically to an end…").

Moreover, as noted by this Court in *Chiquita Int'l Ltd. v. Liverpool & London S.S. Mutual P&I Assoc. Ltd.*, 124 F.Supp.2d 158, 168 (S.D.N.Y. 2000), a plaintiff's demand for a bond issued by an approved surety instead of the LOU it then held, even if only undertaken as a litigation strategy, "fails to raise [sic] to a level of inequity or bad faith which would invalidate the equitable remedy of specific performance."

As set forth in the Declaration of Diego Garat, submitted in conjunction with this Memorandum of Law, the so-called offer of security from ESTC was nothing more than an unsecured promise to pay, coming from the defendant itself.  (Garat Decl. ¶20).  ESTC fails to acknowledge that its purported offer, or offers, of security were wholly inadequate in form and were so valueless as to constitute no offer at all.  While ESTC claims that it envisioned a negotiation as to the proper form of security, ESTC's subjective expectations as to how negotiations would proceed are irrelevant and were unknown to TRC.

This Court should not entertain ESTC's arguments that it is inequitable for TRC to exercise its rights under the law, specifically its right to attachment or adequate substitute security.   ESTC made an informed business decision to breach the charter and sought to re-let the vessel at a higher rate in the rising market, knowing fully the litigation risk it took.  TRC remains willing to accept a bond or other appropriate security, which ESTC's current offers are not.


## POINT IV

## DEFENDANT HAS FAILED TO SHOW GOOD CAUSE WHY THE AMOUNT OF THE ORDER OF ATTACHMENT SHOULD BE REDUCED


Defendant, ESTC, alternatively seeks to reduce the amount of the attachment order.


Supplemental Rule E(6) of the Federal Rules of Civil Procedure provides as follows:


> **"(6) Reduction or Impairment of Security.**  Whenever security is taken the court may, on motion and hearing, for good cause shown, reduce the amount of security given; and if the surety shall be or become insufficient, new or additional sureties may be required on motion and hearing."

ESTC has the burden to show good cause why the security sought by plaintiff should be reduced.  *Maersk, Inc. v. Neewra, Inc.*, 443 F.Supp. 2d 519, 532 (S.D.N.Y.

2006), *Sea Transp. Contractors, Ltd. v. Indus. Chemiques du Senegal*, 411 F.Supp. 2d 386, 396 (S.D.N.Y. 2006).

In a Rule E(4)(f) proceeding – where the initial burden is on the plaintiff to show why an arrest or attachment should not be vacated – there is no obligation on the part of plaintiffs to prove their case. *Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Limited*, 475 F.Supp. 2d 275, 279 (S.D.N.Y. 2006). Likewise, in a motion to reduce the amount attached, plaintiff should not be required to litigate its entire case to justify its claim. The parties have contractually agreed to litigate all disputes before a London arbitration panel where plaintiff will be making a full presentation of its case.

Defendant has, however, attacked plaintiff's statement of its damages and has presented the affidavit of Mr. Hugh Maxwell Townson, defendant's Insurance and Claims Manager, to support its attack. Mr. Townson asserts that ESTC offered to re-charter the M/V APOSTOLOS II for $28,500.00 and that this amount is "about" the market rate at that time. (Townson Decl. ¶21). Both allegations are incorrect.

To begin with, as Mr. Garat makes clear in his declaration, the offer to re-charter the vessel was a sham which plaintiff was never expected to accept. The offer was initially conditioned upon a "minor revision of clause 30" (hire payment) which in fact totally transmogrified the payment clause and further eliminated the anti-technicality provision (clause 31) of the charter party. (Garat Decl. Exhs. 7-8).

TRC was prepared to accept the offer of $28,500.00 per day had ESTC agreed to maintain the same terms in the charter party as the parties had originally freely negotiated. (Garat Declaration ¶14, Exhibit 3). When this was rejected by ESTC, TRC acted in good faith and attempted to negotiate a reasonable compromise. However, ESTC ultimately withdrew its offer. (Garat Decl. ¶19, Exhs. 8-9).

Mr. Townson's bold assertion that the daily market rate for the M/V APOSTOLOS II was $28,500.00 is supported by nothing but his word. His declaration is devoid of any mention of his experience in the market and fails to give the slightest explanation of how he arrived at his figure. In point of fact, ESTC was honest as to why they made the offer, i.e. to cap TRC's damages. (Garat Decl. ¶11, Ex. 2). By making the offer, ESTC hoped to neutralize any attempt on the part of TRC to assert a higher market rate. In addition, had TRC accepted the offer, TRC would have been at a distinct disadvantage in its future dealings with ESTC who, under the new charter party, could have easily canceled the charter party if the banks were slow in transferring funds.

In contrast, Mr. Garat has been personally involved in the chartering of at least 1,650 vessels from which he has derived a substantial knowledge of the market. Mr. Garat's opinion is supported by the report issued by the industry known authority on charter party rates, Clarkson Securities Ltd. (Garat Decl. ¶7, Ex. 1).

ESTC has failed to meet its burden of showing good cause that the attachment order be amended to reduce the amount of the order. Indeed, while plaintiff need not

17

prove its damages with exactitude in attachment proceedings, *Dongbu Express*, 994 F.Supp. at 237, it has certainly shown that its claims are not frivolous. *Id*.

ESTC also makes mention of the fact that TRC should explain or make an accounting for what earnings it "might" have made after the vessel was withdrawn. ESTC also raises the point that it was "possible" and "likely" that TRC continued to receive a profit on the second voyage which went to Iran. Quite apart from the fact that ESTC's allegations are pure speculation, TRC's claim is based upon ESTC's breach of its contract. Any monies made by TRC when it sub-chartered the M/V APOSTOLOS II are irrelevant. The issue to be decided by the arbitrators is the extent to which TRC is entitled to damages from ESTC's breach.

Finally, defendant seems to state that any security obtained to secure plaintiff's claim should be reduced by defendant's claim in quantum meruit. (ESTC Memo of Law, p. 21). This is at the same time that defendant is seeking countersecurity (see Point V). Defendant's argument is specious since the so-called quantum meruit is an independent claim which must be proven and does not serve to reduce plaintiff's claim. Were the court to reduce plaintiff's security on this basis, plaintiff's claim would be undersecured were it to prevail in the London arbitration.

Lastly, Defendant's reliance on the case of *OGI v. RPLogistics*, 2007 WL 1834711 (S.D.N.Y. 2007) is misplaced. There the court vacated the attachment because it lacked admiralty jurisdiction and because the plaintiff had previously settled the claim

18

and received $45,000.00. In the instant case there is nothing to suggest that TRC has

settled its claim or that the ad hoc agreement to complete the voyage to Iran resolved all

claims.

## POINT V

### THE COURT SHOULD NOT AWARD COUNTERSECURITY WHERE ESTC ADHERES TO A RESTRICTED APPEARANCE AND WHERE TRC HAS YET TO ATTACH ANY OF ESTC'S PROPERTY

Under the present circumstances ESTC is not entitled to countersecurity.

Supplemental Rule E(7)(a) states: "When a person who has given security for damages in

the original action asserts a counterclaim that arises from the transaction or occurrence

that is the subject of the original action, a plaintiff for whose benefit the security has been

given must give security for damages demanded in the counterclaim unless the court for

cause shown, directs otherwise."

As it is undisputed that TRC has not yet attached any funds, TRC is not secured at

all. It is black letter law that countersecurity should only be granted upon a defendant's

showing that it is entitled to its own security, and only then to the extent that plaintiff has

been secured. *ROYAL EMPRESS*, 1999 U.S. Dist. LEXIS 22357; *Goudy & Stevens, Inc.*

*v. Cable Marine, Inc.*, 665 F.Supp. 67, 72 (D.Me. 1987); This is especially true where, by

posting countersecurity, a plaintiff is not seeking to release its own property. *Afram Lines*

*Intern., Inc. v. M/V Capetan Yiannis*, 905 F.2d 347, 349-350 (11th Cir. 1990); *Expert*

*Diesel, Inc. v. Yacht 'Fishin Fool'*, 627 F.Supp. 432, 433 (S.D.Fla. 1986).

In addition to the above, ESTC cannot both move for countersecurity and at the same time enter a restricted appearance. Supplemental Rule E(8) provides: "Restricted Appearance. An appearance to defend against an admiralty and maritime claim with respect to which there has issued process in rem, or process of attachment and garnishment, may be expressly restricted to the defense of such claim, and in that event is not an appearance for the purposes of any other claim with respect to which such process is not available or has not been served."

It has been held that the assertion of a counterclaim by a defendant will waive the restricted appearance otherwise available. *The Copperfield (Aktieselskabet Dea v. Wrightson)*, 26 F.2d 175 (5th Cir. 1928) ("By filing a cross-libel, notwithstanding the objection to the jurisdiction which has been reserved in the answer, any defect of service was waived, it submitted itself to the jurisdiction of the court, and the attachment became merely incidental"); *The Fifeshire*, 11 F. 743 (D.La. 1882). On the other hand, courts have held that a jurisdictional defense is not waived by the simultaneous assertion of a counterclaim. *Wright & Miller*, 5C Fed. Practice & Procedure §1397. In the context of the current dispute invoking Supplemental Admiralty and Maritime Rule B & E, TRC submits that should ESTC fail in its motion to vacate the attachment, it should not be afforded the protection of a restricted appearance if it wishes to continue with its counterclaim and motion for countersecurity. ESTC appears to recognize this principle, stating in its memorandum of law, "*should the Order survive* the Court should grant ESTC countersecurity on its counterclaim" (ESTC Memorandum of Law, p. 2) (emphasis added).

Finally, ESTC submits its claim in the amount of $1,171,585.80 (Townson Decl. ¶33) and demands countersecurity in the amount of $474,020.67 (Memorandum of Law, p. 21-23).  However, it has not explained how the former claim figure is broken-down in terms of the hire it claims is owed, presumably based upon the proffered daily hire rate, attorneys' fees and other costs.  TRC therefore requests the opportunity to submit a limited sur-reply addressing only this point should ESTC pursue security for the latter amount.

## CONCLUSION

For the foregoing reasons, ESTC's motion should be denied in all respects and the Order for Process of Maritime Attachment and Garnishment should stand in favor of TRC.

Respectfully submitted,

HILL RIVKINS & HAYDEN LLP
*Attorneys for Plaintiff The Rice Company*

By:    Keith B. Dalen (KD-4997)
       Thomas E. Willoughby (TW-4452)
       Christopher M. Panagos (CP-2199)
       45 Broadway, Suite 1500
       New York, New York 10006
       Tel: 212-669-0600
       Fax: 212-669-0699

21