

# Winter Scott
### Solicitors

St Olave's House
Ironmonger Lane
London EC2V 8EY
Telephone: + 44 (0)20 7367 8989
Fax: + 44 (0)20 7726 2371
DX: 42602 Cheapside
E-mail: firstinitialsurname@winterscott.co.uk

## FAX TRANSMISSION

| | |
|---|---|
| DATE: | 18th July 2007 |
| TO: | 7247 5091 |
| | Reed Smith Richards Butler |
| | Charles Weller/Matthew Enston, ref: CGW/MBE/730368.00016 |
| FROM: | James King |
| OUR REF: | JCK/kr/78-134 |
| NO. OF PAGES: | 3 |

**CONFIDENTIALITY NOTICE:** This facsimile is intended only for the addressee. It may contain privileged and/or confidential information. If you are not the intended recipient please inform us on the above telephone number immediately and do not disclose the contents or take copies.

Re: "APOSTOLOS II" - C/P dated 4th April 2007

We refer to previous correspondence in this matter. Please note that our Clients do wish discussions to take place between ourselves, and we should be grateful if you would advise Owners accordingly.

We now refer to Owners' proposals of yesterday, and have the following comments:

1. Firstly, we note that Owners require that hire be clearly payable at their Piraeus bank. In this regard, we understand from our Clients that, as hire is to be paid in US Dollars, remittance must be made via an intermediate bank in New York; it is not possible to pay US Dollars funds directly to a non-US bank, and, as such, it is for Owners to specify the correspondent bank in New York of their Piraeus bank. If that is the case, then it seems to us that clause 30 as set out in the charter of 4th April properly deals with this.

   We also understand the position to be that, once a paying party has made payment to an intermediary bank, onward transmission to the receiving bank is out of their control.

Partners: Glenn Winter Ken Scott Michael Ellis Damian Wilkes Tim Houghton James King Graeme Lloyd
Associates: Richard Varney (not admitted)
Regulated by the Law Society                                                VAT No GB 819 4174 16

If, however, our/our Clients' understanding of the way in which US Dollar funds are remitted, as set out above, is incorrect, please do let us know.

2. Secondly, Owners also require payment of hire to be made regardless of whether our Clients have first received a hire invoice.

   In this regard, we understand from our Clients that it is a requirement of their accountants and auditors, as well as the US financial regulations applicable to our Clients (who, as Owners are obviously aware, are a US company), that payment orders to their bank must attach an invoice. Our understanding is that this is why clause 30 specifically includes the provision that *"Owners to provide hire invoice in advance to Charterers"*.

   Unfortunately, it is therefore simply not possible or reasonable to expect our Clients to agree to delete the requirement that Owners first provide our Clients with a hire invoice. As the production of such invoices is hardly a time-consuming or onerous task (Owners simply need to alter the period covered by a previous invoice), and in light of the above explanation, we assume that Owners will not insist on this. Can you confirm?

3. Thirdly, Owners additionally require the substitution of the existing anti-technicality regime in clause 31, which requires them to notify our Clients that hire has not been received, to a system in which our Clients are allowed only two *"grace periods"* during the remainder of the charter, to notify Owners themselves, not later than the day hire is due, that there has been a problem in the payment process.

   We are sure that you appreciate that such a system is wholly unreasonable and unworkable, for the very simple reason that our Clients will not know that Owners have not received hire, unless Owners actually tell them. This case amply demonstrates that banks can and do make mistakes, of which our Clients are very unlikely to be aware. Indeed, our Clients' bank confirmed that the monies had been remitted with a value date of 28th June, so our Clients could not have known that anything had gone wrong at Owners' corresponding bank until Owners told them.

   We assume you agree that, by reason of the above, Owners' proposed alterations to the existing ant-technicality regime are unreasonable (not to say completely unworkable), but look forward to your confirmation of this. If you disagree, please explain why.

We look forward to hearing from you on the above at your earliest convenience; we should also point out that your Clients' proposal was made on 13th July, and therefore any increased hire obviously takes place from that date, and not 11th July.

Finally, we understand that the vessel is arriving today and assume that your Clients will be fulfilling their obligations under the relevant contracts in order to minimise any possible delays. In particular, we understand that Owners have already been provided

with an LOI for the discharge of the cargo without production of a Bill of Lading, and there is no reason why your Clients cannot comply with this.

Yours faithfully

WINTER SCOTT