LENNON, MURPHY & LENNON, LLC
Attorneys for Defendant
EXPRESS SEA TRANSPORT CORPORATION
The GrayBar Building
420 Lexington Avenue, Suite 300
New York, New York 10170
Telephone:   (212) 490-6050
Facsimile:   (212) 490-6070
Patrick F. Lennon (PL 2162)
Charles E. Murphy (CM 2125)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THE RICE COMPANY,                                          :
                                                           :
                        Plaintiff,                         :      07 Civ. 7077 (WHP)
                                                           :
        - against -                                        :      ECF Case
                                                           :
EXPRESS SEA TRANSPORT CORPORATION,                         :
                                                           :
                        Defendant.                         :
                                                           :
------------------------------------------------------------X

### DEFENDANT'S REPLY MEMORANDUM OF LAW
### IN SUPPORT OF MOTION TO VACATE ATTACHMENT

Defendant, Express Sea Transport Corp. (hereinafter "ESTC" or "Defendant"), by its undersigned counsel, Lennon, Murphy & Lennon, LLC, submits the within Reply Memorandum of Law in Support of its Motion to Vacate, or alternatively, reduce the Ex Parte Order of Attachment ("Order") obtained by Plaintiff, The Rice Company (hereinafter "TRC" or "Plaintiff"), pursuant to Rules E(4)(f) and E(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Admiralty Rules"). In the further alternative, ESTC moves for countersecurity pursuant to Admiralty Rule E(7)(a).

## PRELIMINARY STATEMENT

The materials presented by the parties make clear that TRC intentionally violated U.S. law by ordering M/V Apostolos II (hereinafter the "Vessel") to Iran. Likewise, the materials make clear that TRC is using the maritime attachment remedy to secure a claim that arises from the illegal voyage. TRC has unclean hands. ESTC has been prejudiced because it cannot transact business in U.S. Dollars without those funds being attached by TRC. Notwithstanding the foregoing, TRC has argued that this Court is without any authority to vacate the attachment on equitable grounds. TRC is quite incorrect, however, because both the U.S. Court of Appeals for the Second Circuit and the United States District Court for the Southern District of New York have consistently held that district courts are entrusted with discretion to vacate abusive or unfair attachments so as not to make them the abettors of inequity. See infra Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty. Ltd., 460 F.3d 434 (2d Cir. 2006); PenneCom B.V. v. Merrill Lynch & Co., 372 F.3d 488 (2d Cir. 2004); and Greenwich Marine, Inc. v. S.S. Alexandra, 339 F.2d 901 (2d Cir. 1965).

Alternatively, the evidence provided by ESTC, namely the two supporting declarations by Hugh Maxwell Townson, makes clear that TRC's claim is grossly exaggerated. As your Honor recently held in Flame Maritime Ltd. v. Hassan Ali Rice Export Co., 07 Civ. 4426 (WHP), 2007 U.S. Dist. LEXIS 64470, *5 (S.D.N.Y. August 31, 2007), a reduction in security is freely granted upon a showing that the attachment is excessive. The two declarations by Mr. Townson explain precisely why the attachment should be reduced from $4,946,170.13 to $1,324,804.71.

## STATEMENT OF FACTS

Reference is made to the two supporting Declarations of Hugh Maxwell Townson, the first dated September 10, 2007 and the second dated October 2, 2007.

2

## ARGUMENT

### POINT I

### PLAINTIFF HAS UNCLEAN HANDS AND EQUITY REQUIRES THAT THE ATTACHMENT BE VACATED

Most significantly, TRC has failed to rebut overwhelming proof that it deliberately violated U.S. law by ordering the Vessel to Iran. In fact, TRC effectively conceded its illegal act when it reported itself to the Office of Foreign Assets Control *after* its violation and *before* it was required to disclose its voyage to Iran in the course of legal proceedings. As previously set forth at length, TRC violated U.S. law by ordering the Vessel to Bandar Imam Khomeini, Iran and, furthermore, deliberately attempted to conceal its activities by using its offshore affiliate, Helena Chartering of the Bahamas. TRC has made *no* attempt to explain its message to the Vessel's master dated June 12, 2007 that read as follows:

> Please note that your good vessel will be calling Iran, hence for this reason your vessel has been fixed on a back to back basis between TRC and our freight company M/s Helena Chartering of Bahamas. The fixture with Klaveness is with Helena Chartering, Bahamas. I am sending you a test message through Helena Chartering and would appreciate if you could henceforth send all messages to freight@helenachartering.com.

See First Townson Decl. at ¶ 15 and Exhibit "5" annexed thereto. In an attempt to downplay the incident, however, TRC has argued that "TRC took the additional step of informing the Office of Foreign Assets Control (OFAC) of the voyage." *See TRC Opposition Memorandum at 10.* TRC's argument is unpersuasive. The fact that TRC advised OFAC *after the violation had occurred but before the violation had become public* can reasonably be construed as TRC's attempt to mitigate OFAC penalties. Stated differently, TRC had been caught red handed. It knew that its violation would necessarily be published in the context of any legal proceeding it commenced against ESTC.

3

It is likely, therefore, that TRC reasoned that it had more to gain by pursuing a claim against ESTC than it did by trying to keep its violation a secret.

TRC has alleged that "ESTC itself has also applied to this Court pursuant to Rule E(7)(a) to secure a claim arising from this same allegedly 'illegal voyage.'" *See TRC Opposition Memorandum at 6.* Here, TRC has attempted to confuse the facts. There is a significant difference between TRC and ESTC. Unlike TRC who is a "U.S. Person" and who intentionally violated U.S. law, ESTC is not a "U.S. Person" and violated no law. Recall that it was ESTC who wrote to TRC no fewer than four times to ask whether TRC held a license from OFAC. It is undisputed that TRC *never* responded to ESTC's requests. Based upon the foregoing facts, and those facts contained in the Townson Declarations, this Court should conclude that TRC violated U.S. law by ordering the Vessel to Iran.

TRC has attempted to sidestep its violation by stating that "[i]f there was a violation of any executive order or other act, which is denied, that does not descend to the level of constituting 'unclean hands.'" *See TRC Opposition Memorandum at 6.* TRC's attempt to draw a distinction is unavailing. TRC has defined the meaning of "unclean hands" too narrowly. Black's Law Dictionary defines the "Unclean hands doctrine" as follows: "Doctrine simply means that in equity, as in law, plaintiff's fault, like defendant's, may be relevant to what, if any, remedy plaintiff is entitled to. Principle that one who has unclean hands is not entitled to relief in equity." Black's Law Dictionary 1524 (6th ed. 1990)(citations omitted). "[A]dmiralty courts [are] courts of purest equity.'" Starboard Venture Shipping v. Casinomar Transp., 93 Civ. 644 (SS), 1994 AMC 1320, 1993 U.S. Dist. LEXIS 15891, at *14, 1993 WL 464686, at *5 (S.D.N.Y. Nov. 8, 1993)(Sotomayor, J.)(quoting Expert Diesel, Inc. v. The Yacht "Fishin' Fool", 627 F. Supp. 432, 433 (S.D. Fl. 1986). As explained in ESTC's initial Memorandum of Law, the Second Circuit held

4

in <u>PenneCom B.V. v. Merrill Lynch & Co.</u>, 372 F.3d 488, 493 (2d Cir. 2004) that a party who comes to the Court with unclean hands will not be entitled to invoke the court's equity lest it would make the court the abettor of iniquity. In reaching its holding in <u>PennCom B.V.</u>, the Second Circuit cited the U.S. Supreme Court and defined the doctrine broadly. "[T]he equitable powers of this court can never be exerted in behalf of one who has acted fraudulently, or who by deceit or any unfair means has gained an advantage. To aid a party in such a case would make this court the abettor of iniquity." <u>Bein v. Heath</u>, 47 U.S. 228, 247, 12 L. Ed. 416 (1848).

   TRC has argued that even assuming that it broke U.S. law, ESTC has not been prejudiced, and in fact has benefited, from TRC's wrongful act of ordering the Vessel to Iran. TRC is mistaken. ESTC has suffered prejudice, and continues to suffer prejudice, because it can no longer conduct business in U.S. Dollars without those funds being attached. In this regard, TRC has achieved its goal and has obtained enormous leverage over ESTC as a result of the $4,946.170.13 Ex Parc Attachment Order. Furthermore, TRC cannot escape the reality that it is using one U.S. law, <i>i.e.</i>, maritime attachment law, to reap the benefit of its having violated another U.S. law, one which prohibits U.S. Persons from trading with Iran. But for TRC illegal voyage to Iran there is no attachment. TRC was deceitful in breaking U.S. law, <i>e.g.</i>, it intentionally tried to conceal its activities by using its offshore affiliate, a Bahamas company, and it refused to provide ESTC with a copy of an OFAC license despite repeated requests. TRC used unfair means to gain an advantage from its illegal trade when it obtained the Ex Parte Attachment Order against ESTC's property.

   TRC has also argued that this Court lacks the equitable power to vacate the attachment even assuming that TRC has used the attachment remedy to secure a claim that arose from an illegal voyage. TRC is mistaken because "[t]he inherent power to adapt an admiralty rule to the equities of a particular situation is entrusted to the sound discretion of the district judge sitting as an admiralty

5

judge . . . ." Greenwich Marine, Inc. v. S.S. Alexandra, 339 F.2d 901, 905 (2d Cir. 1965). "[In admiralty] [t]he district court's exercise of its discretion will be governed by its sense of fairness and equality, which will necessarily be closely tied to the particular factual circumstances presented by a case." Clipper Shipping Lines Ltd. v. Global Transporte Oceanico S.A., 06-Civ.-15299 (PKL)(S.D.N.Y. Feb. 26, 2007) at 4 (copy attached).

TRC is incorrect that Aqua Stoli decided the boundaries of the district courts' equitable vacatur power. To the contrary, in Aqua Stoli the Second Circuit expressly held that "the exact scope of a district court's vacatur power is not before us" and that equitable vacatur is appropriate where the defendant has demonstrated "abuse" by the attaching party. The Aqua Stoli court held that "Then-district Judge Leval astutely noted, however, *the possibility of abuse by the attaching party in some circumstances.*" Aqua Stoli, 460 F.3d at 442 (emphasis added). The Aqua Stoli court made its comment in the context of praising Judge Leval's holding in Integrated Container Serv., Inc. v. Starlines Container Shipping, Ltd., 476 F. Supp. 119 (S.D.N.Y. 1979). In Integrated Container, Judge Leval held that *where there is an "abusive use of the maritime attachment remedy...the courts may easily remedy the situation by exercising discretion to set aside an unfair attachment."* Integrated Container, 476 F.Supp. at 124 (emphasis added). Based on the Aqua Stoli decision, this Court may easily remedy the inequitable situation by exercising discretion to set aside TRC's unfair and abusive attachment. Given the Second Circuit's analysis in Aqua Stoli, it is logical to conclude that it would have upheld equitable vacatur in any number of situations where the attachment was proven abusive or unfair. While the Second Circuit enumerated only the three most common bases for equitable vacatur, it made clear that its list was not an exhaustive one. As such, TRC's logic is flawed because the Court sitting in admiralty has the inherent authority to vacate an attachment that it knows to be unfair or abusive. As recently held by your Honor, while

6

vacatur is appropriate when the technical requirements of Rule B have not been met, "[c]ourts may also vacate an attachment in certain limited circumstances where equity so demands." Flame Maritime Ltd. v. Hassan Ali Rice Export Co., 07 Civ. 4426 (WHP), 2007 U.S. Dist. LEXIS 64470, *4 (S.D.N.Y. August 31, 2007)(citing Aqua Stoli, 460 F.3d at 444).

## POINT II

### ALTERNATIVELY, PURSUANT TO ADMIRALTY RULE E(6) THE ATTACHMENT ORDER SHOULD BE REDUCED TO $1,324,804.71

While TRC is not required to prove its damages with "exactitude," this Court must be satisfied that TRC has reasonably estimated its damages. Also, the attachment must be reduced to account for estimated savings realized by TRC. The Court may find "good cause" to reduce the attachment where the amount of security requested, although possibly recoverable in the underlying action, runs contrary to the contract and/or facts upon which the damages are based. Thus, when finding a defendant has shown "good cause" to reduce the attachment, the court is not required to take a position on the substantive merits of the case, or as to the recovery available under applicable foreign law. See Sea Transport Contractors, Ltd. v. Industries Chemiques Du Senegal, 411 F. Supp. 2d 386, 396 (S.D.N.Y. 2006).

TRC all but ignored Judge Preska's recent decision in Transportes Navieros y Terrestes v. Fairmount Heavy Transport N.V., 07 Civ. 3076 (LAP), 2007 U.S. Dist. LEXIS 50260 (S.D.N.Y. July 6, 2007) that examined the standard for reducing an excessive attachment under Rule E(6). That case is particularly relevant here because in Transportes Navieros y Terrestes, the court reduced the level of a maritime attachment from nearly $1,300,000 to $15,000 where Plaintiff had failed to mitigate its damages and/or reduce its claim to account for estimated savings. In Transportes Navieros y Terrestes, Judge Preska held that "the Court also accepts the undisputed fact that [plaintiff] failed to take any step to lift the arrest for some six months. On the basis of this

7

undisputed fact the Court concludes that because [plaintiff] failed to act reasonably promptly upon being informed of the arrest of the Vessel by [defendant], it failed in its duty to mitigate its damages, including damages it knew it would be exposed to....Thus, [defendant] has demonstrated good cause for a reduction in the amount of the attachment pursuant to Rule E(6)." Transportes Navieros y Terrestes, 2007 U.S. Dist. LEXIS 50260 at *20.

In this case, TRC was under a duty to take reasonable steps to mitigate its alleged loss following the cancellation of the charter party on July 3, 2007. Consistent with the Transportes Navieros y Terrestes decision, TRC is not entitled to recover damages in respect of any losses which could have been avoided by such reasonable steps. Tellingly, TRC has still not revealed what earnings it continued to enjoy for the voyage to Iran after the withdrawal of the vessel by ESTC, which earnings have not been credited for in TRC's calculation of alleged loss.

Furthermore, as painstakingly explained in both Townson Declarations, the appropriate hire rate upon which TRC should have calculated damages is $28,500 per day, and not the exaggerated figure of $36,409 per day. As explained at length in the Second Townson Declaration, there is no justification for TRC's use of a hire rate of $36,409 because that rate is based on the false premise that the Vessel falls into the Handysize category. As Mr. Townson explains, the vessel cannot be accurately classed as Handysize. The court should, instead, apply a hire rate of $28,500 per day for the following compelling reasons. First, it is the rate at which ESTC re-offered the vessel to TRC on July 11, 2007. Second, a hire rate of $28,500 was about the market rate for the Vessel at the time of the alleged wrongful withdrawal of the Vessel on July 3, 2007. Third, following TRC's rejection of ESTC's re-offer, on August 1, 2007 ESTC proceeded to charter the Vessel to a company named Stemcor (UK) Ltd. at the rate of $28,500 for almost exactly the same period for which ESTC offered to re-charter the vessel to TRC. As affirmed by Mr. Townson, the rate of

8

$28,500 was the highest rate available in the market for the Vessel from July 11, 2007 to August 1, 2007.

## POINT III

### IF THE COURT DECLINES TO VACATE THE ATTACHMENT, DEFENDANT IS ENTITLED TO COUNTERSECURITY UNDER ADMIRALTY RULE E(7)(a)

With respect to ESTC's request for countersecurity in the amount of $474,020.67, TRC does not challenge ESTC's entitlement to same except to argue that TRC should not be required to post countersecurity unless it has first obtained security from ESTC. It is undisputed that TRC's claim against ESTC is presently unsecured. ESTC and TRC are seemingly in agreement, *i.e.*, that the securities should be equal until ESTC's counterclaim is fully secured. As such, in the event that the Ex Parte Attachment Order survives, ESTC requests that the Court enter an Order requiring TRC to post reciprocal countersecurity.

In Clipper Shipping Lines Ltd. v. Global Transporte Oceanico S.A., 06-Civ.-15299 (PKL)(S.D.N.Y. Feb. 26, 2007), Judge Leisure ordered a plaintiff to post countersecurity in such a manner. The Clipper Shipping Lines court held as follows:

> [Plaintiff] Clipper does not dispute that Rule E(7) entitles [defendant] Global to be secured for the full value of its counterclaim while Clipper is secured only for roughly nine percent of its claim. This position is consistent with the approach Judge Lynch recently took in a similar situation. In that case, as here, the value of the counterclaim that defendant sought to secure exceeded the amount that the plaintiff had managed to attach as security for its original claim. *Judge Lynch ordered the plaintiff to provide security in the same amount that it has succeeded in attaching and that it provide additional security matching any additional property it should subsequently succeed in attaching.* Finecom Shipping Ltd. v. Multi Trade Enterprises AG, 05 Civ. 6695 (GEL), 2005 AMC 2952, 2005 U.S. Dist. LEXIS 25761, at *6, 2005 WL 2838611, at *2 (S.D.N.Y. Oct. 24, 2005).
>
> ***
>
> Clipper is ordered to post a bond or other satisfactory security in the sum of $154,647.73...and to provide additional security matching any additional property

9

Clipper has restrained or is able to restrain in the future in any jurisdiction in connection with the underlying arbitration, up to a maximum of $2,077,173.90

Clipper Shipping Lines Ltd. v. Global Transporte Oceanico S.A., 06-Civ.-15299 (PKL)(S.D.N.Y. Feb. 26, 2007) at 6 (citations omitted). Consistent with the holdings in Clipper Shipping Lines and Finecom Shipping, this Court should order TRC to post countersecurity in an amount equal to the amount of security that TRC may obtain from ESTC.

## CONCLUSION

For the foregoing reasons, the Court should vacate the Ex Parte Attachment Order pursuant to Admiralty Rule E(4)(f). In the alternative, the Court should reduce the Order pursuant to Admiralty Rule E(6) from $4,946,170.13 to $1,324,804.71 and also order the posting of countersecurity pursuant to Admiralty Rule E(7)(a) in the amount of $474,020.67.

Dated: October 2, 2007
New York, NY

Respectfully submitted,

The Defendant,
EXPRESS SEA TRANSPORT CORPORATION,

By: _____
Charles E. Murphy (CM 2125)
Patrick F. Lennon (PL 2162)
LENNON MURPHY & LENNON, LLC
The GrayBar Building
420 Lexington Ave., Suite 300
New York, NY 10170
(212) 490-6050 (phone)
(212) 490-6070 (fax)
cem@lenmur.com
pfl@lenmur.com

## AFFIRMATION OF SERVICE

I hereby certify that on October 2, 2007, a copy of the foregoing Reply Memorandum of Law was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

By: _____
Charles E. Murphy

Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CLIPPER SHIPPING LINES LTD.,

    Plaintiffs,

- against -

GLOBAL TRANSPORTE OCEANICO
S.A.,

    Defendant.



MEMORANDUM ORDER
06 Civ. 15299(PKL)

LEISURE, District Judge:

    Global Transporte Oceanico, S.A. ("Global"), the defendant in this admiralty action, moves this Court for security for its counterclaim pursuant to Rule E(7) of the Supplemental Admiralty Rules of the Federal Rules of Civil Procedure. For the following reasons, Global's motion is granted in part.

### Background

    Clipper Shipping Lines Ltd. ("Clipper"), a company organized and operating under the laws of Liberia with a principal place of business in Monrovia, and Global, a company organized under and exist by virtue of the laws of Brazil with a registered office in Rio de Janeiro, Brazil, contracted to operate a liner service between the east coast of South America and West Africa. This admiralty action arises from a dispute regarding that contract. The underlying dispute is the subject of arbitration before the International Court of Arbitration.

1

Clipper brought this action seeking security for its claims in that arbitration. On Clipper's ex parte application pursuant to Rule B of the Supplemental Rules, this Court entered an order authorizing process of attachment and garnishment of up to $1,644,192.40 of Global's property. Of this amount, Clipper states it has successfully attached $154,597.43.[1] Clipper has filed another attachment action in Switzerland for the same arbitrated claims, but it is unclear on the current record whether Clipper has successfully attached any of Global's property pursuant to that action. Global has made a counterclaim for $2,077,173.90 and now moves this Court for security for the full value of the counterclaim.

### Discussion

Rule E(7)(a) of the Supplemental Rules provides, in relevant part, that

> When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counterclaim unless the court, for cause shown, directs otherwise.

This provision gives the district court "broad discretion in deciding whether to order countersecurity." Result Shipping v. Ferruzzi Trading USA, 56 F.3d 394, 399 (2d Cir. 1995). The Court of Appeals for the Second Circuit has identified two principles

---

[1] Global notes an inaccuracy of some fifty dollars in Clipper's arithmetic.

that should guide the district court in the exercise of its discretion: the district court should be mindful that, while the purpose of Rule E(7) is to "place the parties on an equality as regards security," "the Rule is not intended to impose burdensome costs on a plaintiff that might prevent it from bringing suit." Id. (quotation marks and citations omitted). Inherent in the district court's discretion in deciding whether to order countersecurity is discretion to determine the amount of the countersecurity. See Starboard Venture Shipping v. Casinomar Transp., 93 Civ. 644(SS), 1994 AMC 1320, 1993 U.S. Dist. LEXIS 15891, at *13, 1993 WL 464686, at *5 (S.D.N.Y. Nov. 8, 1993)(Sotomayor, J.)(citing Afram Lines International, Inc. v. M/V Captain Yiannis, 905 F.2d 347, 349 (11th Cir. 1990)).

Clipper does not dispute that Rule E(7) entitles Global to countersecurity; however, Clipper argues that it would be inequitable for Global to be secured for the full value of its counterclaim while Clipper is secured only for roughly nine percent of its claim. This position is consistent with the approach Judge Lynch recently took in a similar situation. In that case, as here, the value of the counterclaim that the defendant sought to secure exceeded the amount that the plaintiff had managed to attach as security for its original claim. Judge Lynch ordered the plaintiff to provide security in the same amount that it had succeeded in attaching and that it

3

provide additional security matching any additional property it should subsequently succeed in attaching. Finecom Shipping Ltd v. Multi Trade Enterprises AG, 05 Civ. 6695(GEL), 2005 AMC 2952, 2005 U.S. Dist. LEXIS 25761, at * 6, 2005 WL 2838611, at *2 (S.D.N.Y. Oct. 24, 2005). Other courts in this district, however, have granted security for the full value of the counterclaim even when it exceeds the value of the original claim, see Verton Navigation, Inc. v. Caribica Shipping Ltd., 90 Civ. 6940(JFK), 1991 U.S. Dist. LEXIS 6722, 1991 WL 90807 (S.D.N.Y. May 21, 1991), or have granted security in an amount less than the full value of the counterclaim but greater than the amount the plaintiff had succeeded in attaching, see Ythan Ltd. v. Americas Bulk Transport Ltd., 336 F.Supp.2d 305, 309 (S.D.N.Y. 2004). Such seemingly disparate results are not to be unexpected given that "'admiralty courts [are] courts of purest equity.'" Starboard Ventures, 1993 U.S. Dist. LEXIS 15891, at *14, 1993 WL 464685, at *5 (quoting Expert Diesel, Inc. v. The Yacht "Fishin' Fool", 627 F.Supp. 432, 433 (S.D. Fl. 1986))(alteration in Starboard Ventures). The district court's exercise of its discretion will be governed by its sense of fairness and equality, which will necessarily be closely tied to the particular factual circumstances presented by a case.

Judge Lynch's approach in Finecom Shipping is the most appropriate here. This is so in part because the value of

Global's counterclaim is not substantially different from the value of Clipper's original claim. Accordingly, ensuring that the parties are secured for the same amount will "place the parties on an equality as regards security," Result Shipping, 56 F.3d at 399. To order that Clipper post security for the full value of Global's counterclaim would not achieve equality because Global has not posted security for the full value of Clipper's claim against it. It is worth noting that Clipper does not claim that the costs of posting countersecurity will be burdensome.

Global urges that its right to security for its claim should not be limited simply because the claim was brought as a counterclaim rather than as an original claim. In principle, this argument is appealing. However, Global has not sought to demonstrate to the Court that it would have been any more successful in securing its claim pursuant to Rule B than Clipper was. Rather, Global argues that its Rule B right would be most effective in this District because electronically transferred funds in the hands of an intermediary bank may be attached pursuant to Rule B and because these intermediary banks are often in New York. See Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263, 273, 278 (2d Cir. 2002). However, Clipper's counsel is aware of the holding in Winter Storm, see 310 F.3d at 263, and has been serving process on the garnishees on a daily basis (see

5

Harwood Decl. Ex. 1, Feb. 14, 2007); yet Clipper has managed to attach only nine percent of the value of its claim. The Court has no basis to believe that Global would be more successful and thus has no basis to believe that Global is disadvantaged by having filed a counterclaim rather than the original complaint.

## Conclusion

For the reasons set forth herein, Clipper is ordered to post a bond or other satisfactory security in the sum of $154,647.73 (giving Global the benefit of Clipper's miscalculation) and to provide additional security matching any additional property Clipper has restrained or is able to restrain in the future in any jurisdiction in connection with the underlying arbitration, up to a maximum of $2,077,173.90.

SO ORDERED.

New York, New York

February 26, 2007

_____
U.S.D.J.

6