UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
THE RICE COMPANY,                   :

          Plaintiff,           :        07 Civ. 7077 (WHP)

     -against-                     :        MEMORANDUM AND ORDER

                              :
EXPRESS SEA TRANSPORT
CORPORATION,                        :

          Defendant.           :
------------------------------X

WILLIAM H. PAULEY III, District Judge:

        Plaintiff The Rice Company ("Rice") brings this action to attach assets of Defendant Export Sea Transport Corporation ("ESTC") as security for its pending arbitration claim against ESTC. ESTC moves pursuant to Fed. R. Civ. P. Supp. Rule E to vacate this Court's ex parte order of attachment dated August 9, 2007 (the "Attachment Order"), or to reduce the amount attached. In the alternative, ESTC seeks counter-security for its counterclaim in arbitration against Rice. For the following reasons, ESTC's motion to vacate or reduce the amount of the attachment is denied and its motion for counter-security is granted.

BACKGROUND

        Rice, a California-based commodities trader, chartered the M/V APOSTOLOS II (the "Vessel") from ESTC, a Panamanian company, on April 4, 2007 for a period of approximately thirteen months at a rate of $24,500 per day. (Declaration of Diego Garat dated Sept. 25, 2007 ("Garat Decl.") ¶¶ 2-3; Verified Complaint dated Aug. 9, 2007 ("Compl.") ¶¶ 2-3, Ex. 1: Charter Contract (the "Charter Contract") at 1, 2.) The Vessel passed through several

1

generations of sub-charterers during Rice's contract period, until a Norwegian company in Singapore sub-chartered the Vessel to an Australian company that transported aluminum from Australia to Iran. (Garat Decl. ¶ 4.) The aluminum was to be unloaded in Iran between July 19, 2007 and August 3, 2007. (Garat Decl. ¶ 4.)

On July 3, 2007, ESTC canceled the Charter Contract, claiming that Rice had not rendered timely payment. (Garat Decl. ¶ 5.) Rice contends that because the Vessel was en route to Iran when it received notice of the cancellation, Rice was forced to accept an interim contract with ESTC at a higher rate of $28,500 per day. (Garat Decl. ¶ 5.)

ESTC then offered Rice a new charter for the remainder of the original Charter Contract at a rate of $28,500 per day, with stricter payment conditions than contained in the Charter Contract. (Declaration of Hugh Maxwell Townson dated Sept. 10, 2007 ("Townson Decl.") ¶ 20, Ex. 6: Email from Hugh Maxwell Townson to The Rice Company USA.) Rice declined and filed for arbitration in London, claiming $4,946,170.13 in damages from ESTC's withdrawal of the Vessel. (Garat Decl. ¶¶ 16-18, Ex. 6: Letter dated July 17, 2007 from James King to Charles Weller; Compl. ¶¶ 10-11.) The damages estimate was based on the rate of $36,409 per day that Rice determined would be required to charter a similar Vessel. (Garat Decl. ¶¶ 6-7, Ex. 1: Report published by Clarkson's Group dated July 23, 2007.)

ESTC counterclaims in the arbitration that Rice failed to pay for the interim service that allowed the Vessel to complete its Iran trip. (Townson Decl. ¶¶ 26-30.) ESTC seeks $1,171,585.80 in damages for its counterclaim, and is currently holding $697,565.13 of Rice's assets as security until the counterclaim is decided. (Townson Decl. ¶¶ 33-34.)

On July 24, 2007, ESTC offered "to provide [Rice] with security in the form of an ESTC letter of undertaking, subject to agreement between the parties as to the terms of that

2

[letter] and on quantum." (Townson Decl. ¶ 6, Ex. 1: Email dated July 24, 2007 from Charles Weller to James King.) Rice did not respond, instead filing this action. (Compl. ¶ 1.) On August 9, 2007, this Court ordered attachment of ESTC's assets up to $4,946,170.13. (Attachment Order at 2.)

On August 28, 2007, ESTC's counsel asked Rice to abandon the Attachment Order in exchange for a bank guarantee, with "Rice undertaking to answer for the costs of the [guarantee]." (Townson Decl ¶ 10, Ex. 3: Letter dated August 28, 2007 from Charles Weller to James King.) Rice again refused ESTC's offer. (Townson Decl ¶ 11.)

## DISCUSSION

I. Motion to Vacate

    A. Legal Standard

ESTC moves to vacate the attachment on equitable grounds. "[Fed. R. Civ. P. Supp.] Rule B specifies the sum total of what must be shown for a valid maritime attachment." Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 447 (2d Cir. 2006). As long as the procedural requirements of Rule B are met, courts must sustain the attachment, unless the defendant can show that an equally convenient alternative exists for the plaintiff. Aqua Stoli, 460 F.3d at 444. Specifically, "a district court may vacate [an] attachment [on equitable grounds] if...1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain in personam jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise." Aqua Stoli, 460 F.3d at 445. The burden is on the defendant to demonstrate the equitable grounds for vacatur. Aqua Stoli, 460 F.3d at 445 n. 5.

3

ESTC does not contest that the procedural requirements of Rule B have been satisfied. Rather, it argues vacatur is warranted because (1) Rice rejected its prior offers of security, and (2) Rice has unclean hands, having engaged in business transactions with Iran in violation of Executive Order No. 12959 § 1(d) and 50 U.S.C. §§ 1702, 1705.

B. ESTC's Offer of Alternative Security

While a court may vacate an attachment if the plaintiff has already obtained security, Aqua Stoli, 460 F.3d at 445, ESTC has merely offered to provide security. In fact, the availability of other security does not preclude attachment. See Aqua Stoli, 460 F.3d at 444 ("Federal admiralty law allows a plaintiff to seize assets and bring suit wherever such assets may be found precisely because, while other assets may be available, plaintiffs may encounter difficulty tracking them down."). Moreover, ESTC's initial offer of a letter of undertaking was subject to further negotiation, and the subsequent offer of a bank guarantee was conditioned on Rice paying unspecified costs. (Townson Decl. Exs. 1, 3.) In light of these uncertainties, ESTC has not shown the alternative security would even be equivalent to that afforded by a Rule B attachment. See Aqua Stoli, 460 F.3d at 445 n. 5 (placing burden on party seeking vacatur to show alternative security existed). ESTC's offer to provide security therefore cannot be grounds for vacatur.

C. Unclean Hands

ESTC's argument for vacatur on the ground that Rice violated the laws of the United States by conducting business with Iran is also unavailing. Courts in a maritime attachment action are not permitted to make substantive determinations on the plaintiff's

4

underlying claim, since "Rule B specifies the sum total of what must be shown for a valid maritime attachment." Aqua Stoli, 460 F.3d at 447. "[A] proper Verified Complaint is all that is required to satisfy Rule B and to prevail against a Rule E(4) motion to vacate." Transportes Navieros y Terrestes, S.A. de D.V. v. Fairmount Heavy Transport N.V., No. 07 Civ. 3076 (LAP), 2007 WL 1989309, at *4 (S.D.N.Y. June 6, 2007). ESTC argues that cases prior to the enactment of Rule E(4) imply courts may generally exercise broad discretion to prevent abuse by the plaintiff. However, "[i]n none of these cases . . . was the determinative question anything other than whether the defendant could be 'found' within the district—in other words, whether the textual requirements of the attachment rule were met." Aqua Stoli, 460 F.3d at 442.

This Court cannot consider the Plaintiff's unclean hands without probing the merits of the underlying claim. The Charter Contract itself makes no mention of Iran; the Court would have to make a factual inquiry into Rice's involvement, as the voyage to Iran was undertaken through a sub-charter (Garat Decl. ¶ 4). Moreover, even if Rice's voyage to Iran did violate United States law, the Charter Contract could still be enforceable. "The violation of a statute that is merely malum prohibitum will not necessarily render a contract illegal and unenforceable." Benjamin v. Koeppel, 85 N.Y.2d 549, 553 (N.Y. 1995). Determining the merits of these underlying issues would undermine the standard that "a proper Verified Complaint is all that is required," Transportes, 2007 WL 1989309, at *4.

ESTC's motion to vacate is therefore denied. While upholding the attachment enforces a contract that may be illegal, this Court reads Aqua Stoli to require such a result. However, this Court will forward a copy of this Memorandum and Order to the United States Attorney for the Southern District of New York for such action as he deems appropriate. "Under our Constitution no court, state or federal, may serve as an accomplice in the willful

5

transgression of 'the Laws of the United States.'" Lee v. State of Fla., 392 U.S. 378, 386 (1968) (quoting U.S. Const. art VI).

II. Motion to Reduce Attachment

ESTC moves in the alternative for a reduction in the attachment. "Whenever security is taken the court may, on motion and hearing, for good cause shown, reduce the amount of security given." Fed. R. Civ. P. Supp. Rule E(6). While "the plaintiff need not prove its damages with exactitude," the court must find that the plaintiff's damages estimate is "not frivolous." Dongbu Express Co. Ltd. v. Navois Corp., 944 F. Supp. 235, 237 (S.D.N.Y. 1996). Courts have reduced the damages where the plaintiff has offered no evidence to support its claim, see Daeshin Shipping Co. Ltd. v. Meridian Bulk Carriers, Ltd., No. 05 Civ. 7173 (NRB), 2005 WL 2446236, at *2 (S.D.N.Y. Oct. 3, 2005) (reducing attachment to amount of attachment for which plaintiff offered substantiating evidence), or where it is an "undisputed fact" that the plaintiff failed to mitigate damages, see Transportes, 2007 WL 1989309, at *7 (reducing the attachment because plaintiff admitted to waiting six months before trying to mitigate damages).

Because Rice provides evidence supporting its claim that $36,409 was the prevailing market rate for chartering a Vessel of equivalent size and utility (Garat Decl. ¶¶ 6-10, Ex 1), Rice's damages estimate is non-frivolous, see Dongbu, 944 F. Supp. at 237. Although ESTC offers evidence that $28,500 was closer to the market rate (Townson Decl. ¶ 20, Ex. 6), the existence of such a factual dispute precludes reduction of the attachment. See Transportes, 2007 WL 1989309, at *7 (requiring indisputable evidence to reduce attachment). ESTC's motion to reduce the amount of the attachment is therefore denied.

III. Motion for Counter-Security

    ESTC seeks counter-security from Rice for ESTC's counterclaim that Rice failed to make payments for the completed voyage to Iran. "When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counterclaim unless the court for cause shown, directs otherwise." Fed R. Civ. P. Supp. Rule E(7)(a). Once satisfied that the counterclaim is "non-frivolous," a court need not probe more deeply into the strength of the counterclaim to grant counter-security. Result Shipping Co., Ltd. v. Ferruzzi Trading USA Inc., 56 F.3d 394, 399-400 (2d Cir. 1995). Where the plaintiff does not offer any evidence that it would be "financially unable to post counter-security or that posting the counter-security would impair its ability to pursue its claim in arbitration," courts typically grant counter-security. Daeshin Shipping, 2005 WL 2446236, at *3.

    ESTC seeks to attach $474,020.67, the difference between the amount it claims in London and the amount it has already secured from Rice. (Townson Decl. ¶¶ 33-34.) ESTC's counterclaim arises from the same occurrence that is the subject of Rice's claim. ESTC has also alleged facts indicating that Rice has not paid for its use of the ship en route to Iran, allegations that render the counterclaim non-frivolous. (See Townson Decl. ¶¶ 26-30.) Moreover, Rice does not argue that counter-security would be a financial burden great enough to jeopardize Rice's ability to bring its own claim. ESTC's motion for counter-security in the amount of $474,020.67 is therefore granted.

## CONCLUSION

For the foregoing reasons, Defendant ESTC's motion to vacate and its motion to reduce the attachment are denied. ESTC's motion for counter-security in the amount of $474,020.67 is granted.

Dated: November 15, 2007
       New York, New York

                                 SO ORDERED:

                                 WILLIAM H. PAULEY III
                                 U.S.D.J.

*Counsel of Record*

Keith B. Dalen, Esq.
Hill Rivkins & Hayden LLP
45 Broadway, Suite 1500
New York, NY 10006-3739
*Counsel for Plaintiff*

Patrick Lennon, Esq.
Lennon, Murphy & Lennon, LLC
420 Lexington Avenue, Suite 300
New York, NY 10170
*Counsel for Defendant*

*Copy forwarded to:*

Hon. Michael J. Garcia
United States Attorney
Southern District of New York
1 St. Andrews Plaza
New York, NY 10007